In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-4086

DEREK A. SMITH,

*Plaintiff-Appellant*,

*v.*

BALL STATE UNIV., BALL STATE UNIV. BOARD OF TRUSTEES,
BALL STATE UNIV. POLICE DEPT., JOHN ROGERS,
JOHN FOSTER, CRAIG HODSON AND RHONDA CLARK,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP00-0478-C-B/S—**Sarah Evans Barker**, *Judge*.

ARGUED MAY 23, 2002—DECIDED JULY 8, 2002

Before FLAUM, *Chief Judge*, and BAUER and ROVNER,
*Circuit Judges*.

FLAUM, *Chief Judge*.  Plaintiff-Appellant Derek A. Smith
filed suit under 42 U.S.C. §§ 1983 and 1988 alleging that
John Rogers, John Foster, Craig Hodson and Rhonda Clark
(collectively "Defendants" or "the officers"), all members of
the Ball State University Police Department, used excessive
force in detaining him. The district court granted summary
judgment in favor of Defendants, and Smith appeals. For
the reasons stated herein, we affirm.

## I.  Background

At the time of the incident, Smith was a student at Ball State University who suffered from juvenile diabetes. On March 19, 1998, Smith had a diabetic shock episode at the Ball State University Student Center. The Student Center's hotel desk clerk contacted the Ball State Police Department, and campus police Officers Rhonda Clark and Craig Hodson responded to the call. When they arrived, Officers Clark and Hodson witnessed Smith acting strangely. They approached Smith and recognized a medical identification bracelet that alerted them to Smith's medical condition. Officers Clark and Hodson contacted emergency medical personnel, who treated and released Smith.

Four days later, Smith again lapsed into diabetic shock. This time, Smith was operating a motor vehicle, which he drove onto a sidewalk on Ball State's campus. A campus shuttle bus driver witnessed the incident and contacted campus police dispatch. The bus driver reported a possible drunk driver and stated that the vehicle nearly struck several pedestrians. Police dispatch contacted Corey Wilkinson, a Ball State student who also worked as a parking attendant, and asked him to investigate the situation. Wilkinson walked to the scene, observed Smith seated in his car and noted that the vehicle was running. Wilkinson tapped the window and attempted to gain Smith's attention, but Smith was unresponsive. Wilkinson contacted police dispatch, stated that the driver was incoherent and that dispatch should send an ambulance. Wilkinson may have mentioned that the driver was drunk or on drugs, although he does not recall specifically whether he provided dispatch with such information.

Several minutes later, Ball State Police Officers John Rogers and John Foster arrived at the scene.[1] Officer Foster opened the passenger door and turned off the car's ignition. The officers asked Smith to exit his vehicle, but Smith was unresponsive. Accordingly, the two officers forcibly attempted to extract Smith from his car. Officer Rogers initially tried to remove Smith; however, Officer Foster intervened because Rogers was an intern. Foster used a technique known as a "straight arm bar" and, with Rogers's assistance, extracted Smith from his car.

While Foster and Rogers were removing Smith from his car, Officer Craig Hodson, who had responded to the Student Center clerk's call four days earlier, also arrived at the scene. Because Foster and Rogers were forcibly removing Smith from his vehicle, Officer Hodson believed that the three individuals were engaged in a struggle. As a result, Officer Hodson jumped across the hood of Smith's vehicle and attempted to apply a "knee strike" to Smith's leg. However, Officer Hodson slipped and, rather than apply a knee strike, tackled Rogers, Foster and Smith. The three officers then held Smith's face to the ground and handcuffed him. When they finally brought Smith to a seated position, Officer Hodson recognized him from the March 19 incident. In addition, Smith's roommate, Dale Englehardt, coincidentally happened upon the scene. According to Englehardt, he informed the officers that Smith was a diabetic and pointed out Smith's medical identification bracelet. Despite this information and the fact that Officer Hodson recognized Smith as a diabetic, the officers left Smith handcuffed until an ambulance arrived several minutes later. Ball State University Officer Rhonda Clark also arrived after her colleagues had handcuffed Smith. She remained with Smith until EMS personnel arrived. As a result of the encounter,

---

[1] John Rogers was technically a "reserve officer's intern." For simplicity, however, we will refer to him as Officer Rogers.

Smith sustained scratches and bruises on his face, marks on his wrists from the handcuffs and a marble-sized bump on his head.

Smith filed suit alleging that the officers violated his constitutional rights and committed certain state law torts against him.[2] After discovery, the Defendants moved for summary judgment, arguing that Smith failed to establish a constitutional violation and that, if he did, the officers were entitled to qualified immunity. The district court granted Defendants' motion. The district court first held that Smith's detention was an investigatory detention and not a formal arrest. The court then noted that Smith's detention was reasonable, particularly due to the risks posed by an unresponsive driver in command of a vehicle and the fact that the officers reasonably believed Smith was impaired by either drugs or alcohol. Finally, relying on *Tom v. Voida*, 963 F.2d 952 (7th Cir. 1992), the district court granted summary judgment on Smith's excessive force claim. The court stated that Smith's unresponsiveness necessitated the use of minimal force to remove Smith from his vehicle. Moreover, the court held that the use of handcuffs "was reasonable given the context of the investigatory stop, Smith's lack of cooperation with officers on the scene, and Defendants' goal of protecting themselves and the public from harm."

## II. Discussion

We review the district court's grant of summary judgment *de novo*. Summary judgment is proper only when "the

---

[2] Smith's complaint also named Ball State University and its subsidiary units as Defendants. However, the district court granted summary judgment on those claims pursuant to the Eleventh Amendment, and Smith does not appeal that decision. Accordingly, we are left with Smith's lawsuit against the individual officers who had personal involvement in his detention.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, we view all facts and draw all inferences in favor of the nonmovant. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir. 2002). If the record as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

Smith raises two arguments on appeal, although they are significantly related. First, Smith contends that the district court erred in analyzing his detention as a legitimate *Terry* stop as opposed to a formal arrest requiring probable cause.[3] Second, Smith maintains that the district court improperly granted summary judgment on his excessive force claim. We believe that although the issue of whether the officers' detention of Smith evolved into a formal arrest is a close one, the district court properly analyzed the encounter as an investigatory detention. Furthermore, if the stop did evolve into a formal arrest, the Defendants had probable cause to arrest Smith and therefore acted properly under the Fourth Amendment. Finally, we hold that the officers did not use excessive force in detaining Smith. The overlap between these issues will become apparent below; however, because Smith's two claims allege independent

---

[3] A *Terry* Stop, first recognized by the Supreme Court of the United States in *Terry v. Ohio*, 392 U.S. 1 (1968), is a brief, nonintrusive detention that allows law enforcement officers to investigate possible criminal activity despite the absence of probable cause to arrest formally.

constitutional violations, we address each argument sep-
arately.

### A.  Investigative Stop or Formal Arrest

Smith's first argument focuses on the distinction between
an investigatory detention and a formal arrest. As our prior
cases dealing with this issue demonstrate, the differences
between a *Terry* stop and a formal arrest are subtle, *see
United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994),
but important in most cases. They are important because
the legitimacy of a *Terry* stop depends upon an officer's
ability to produce articulable facts giving rise to a reason-
able suspicion that a defendant "has been, is, or is about to
be engaged in criminal activity." *United States v. Smith*, 3
F.3d 1088, 1095 (7th Cir. 1993). In contrast, a formal arrest
requires probable cause, a more demanding standard.
*United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir. 1993).
Ordinarily, the importance of the distinction between *Terry*
stop and formal arrest is critical because our characteriza-
tion of the encounter between Smith and the Defendants
determines what requirements the Fourth Amendment
imposes upon law enforcement agents.[4] *See United States v.
McCarthur*, 6 F.3d 1270, 1275 (7th Cir. 1993). We have often
repeated that no bright line exists to determine when a
legitimate *Terry* stop evolves into an illegal arrest. *United
States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995); *Weaver*, 8
F.3d at 1243; *Smith*, 3 F.3d at 1094. Rather, we evaluate
the totality of the circumstances of each case, and we ex-
amine separately each stage in the encounter between
Defendants and Smith. *Id.*

---

[4] The distinction is less important in this case because, as our
foregoing discussion illustrates, the officers had probable cause to
arrest Smith.

We first note that Defendants had a reasonable suspicion of criminal activity to justify detaining Smith when they first happened upon the scene. *See Tom v. Voida*, 963 F.2d 952, 957 (7th Cir. 1992). Officers Rogers and Foster received a police dispatch stating that a vehicle had veered off the street and had come to rest on a campus sidewalk, nearly striking several pedestrians. When the officers arrived to investigate, they observed Smith's vehicle on the sidewalk. The vehicle was running, and the officers' attempt to communicate with Smith was unsuccessful. These circumstances, in and of themselves, allowed a reasonable officer to believe that "criminal activity [was] afoot" and justified a brief investigatory detention. *United States v. Yang*, 286 F.3d 940, 949 (7th Cir. 2002).

Having found that the officers' actions were justified at their inception, we must next examine whether the ongoing detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *Vega*, 72 F.3d at 515 (citing *Smith*, 3 F.3d at 1095). This standard requires us to evaluate Defendants' attempt to remove Smith from the vehicle and their concomitant use of handcuffs. Smith contends that while the officers initially acted reasonably, at some point the encounter evolved from a legitimate *Terry* stop into a formal arrest that lacked probable cause. According to Smith, this "trigger point" occurred immediately after the officers turned off Smith's car and attempted unsuccessfully to communicate with him. At that time, Smith maintains that (1) because he merely was unresponsive (and not resisting), the officers had no authority to remove him from the car, and (2) he posed no danger to anyone in the area. We disagree with both contentions. First, police officers are permitted to order a driver to exit his or her vehicle during the course of an investigatory stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) ("we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an

automobile."); *New York v. Class*, 475 U.S. 106, 115-16 (1986) ("officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lacked any particularized reason for believing the driver possesses a weapon."). This rule comports with the Fourth Amendment's reasonableness requirement for obvious reasons. An officer who confronts a potentially intoxicated driver must have the discretion—without probable cause—to order the individual out of the vehicle. Anything less would allow an unfit driver to retain control of his or her car.

Smith's contention that he posed no danger to anyone in the area is similarly unavailing. An officer may detain a suspect to preserve the safety of the officers, the suspect and the general public. *See Terry*, 392 U.S. at 24 (". . . we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations were they may lack probable cause for an arrest."). In this case, Smith posed a threat to himself, the officers and the general public, even after Officer Foster turned off Smith's vehicle and attempted unsuccessfully to communicate with him. Indeed, contrary to Smith's assertions, his unresponsiveness did not neutralize the safety threat, but rather exacerbated it by adding an element of unpredictability. We thus find that the decision to remove Smith from his vehicle was a constitutionally permissible action pursuant to a legitimate investigatory stop under *Terry*.

The officers' decision to handcuff Smith presents a closer question, but one that we ultimately need not decide to resolve this appeal. Even if we were to hold that the continued use of handcuffs transformed the initial *Terry* stop into a formal arrest, the officers had probable cause to arrest Smith. An officer has probable cause to arrest when "the totality of the facts and circumstances within his

knowledge and of which he has reasonably trustworthy information is sufficient that a prudent person would believe that the suspect committed or was committing an offense." *Marshall v. Teske*, 284 F.3d 765, 770 (7th Cir. 2002) (citing *United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000)). Critically, the probable cause analysis is an *ex ante* test: "the fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant as to whether probable cause existed at the crucial time. *Qian v. Kautz*, 168 F.3d 949, 954 (7th Cir. 1999) (citing *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994)). The "crucial time" in this case was the point at which the officers decided to handcuff Smith. At that time, the officers reasonably believed Smith to be an intoxicated driver, a crime in the state of Indiana. Ind. Code § 9-30-5-2. In addition, it is undisputed that Smith did not respond to the officers' requests to exit his vehicle, and Indiana law makes it a misdemeanor to resist or obstruct an officer while he is performing any act in his official capacity and with lawful authority. Ind. Code § 35-44-3-3; *but see Teske*, 284 F.3d at 771 (rejecting a similar argument under Wisconsin law). Thus, even accepting Smith's argument as true (i.e., that the officers arrested Smith), no Fourth Amendment violation occurred because the officers had probable cause to believe that Smith had committed a crime.

## B. *Excessive Force*

Smith's excessive force claim is significantly intertwined with our preceding discussion. We address it separately to show precisely why the Officers' use of force in this case did not rise to the level of a constitutional violation. Smith argues that the officers used excessive force at least three times during the encounter: (1) his forced removal from the car; (2) Officer Hodson's failed attempt to apply a "knee strike"; and (3) the Officers' use of handcuffs. We analyze

claims alleging that an officer used excessive force under the Constitution's Fourth Amendment and its reasonableness requirement.[5] Under this standard, the relevant inquiry is "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotations omitted). The amount of permissible force depends upon the specific situation, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. When police officers face what is essentially a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them. *Id.* at 396-97.

Viewing the evidence in the light most favorable to Smith, we agree with the district court's that no reasonable jury could conclude that the Defendants used excessive force in detaining Smith. As discussed previously, the officers were entitled to order Smith to exit his vehicle. *See Mimms*, 434 U.S. at 110-11; *Class*, 475 U.S. at 115-16. When Smith failed to do so, the officers were justified in using force to remove him, particularly given the potential threat to public safety of an intoxicated driver in command of a running vehicle.

Further, when Officer Hodson arrived at the scene, his belief that Officers Rogers and Foster were engaged in a

---

[5] In *Graham*, the Supreme Court considered the standard that should be used to assess an individual's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of an individual. 490 U.S. at 388. As a result, our inquiry is the same, regardless of whether Smith's detention was an investigatory stop or a formal arrest.

struggle with Smith was reasonable. We must evaluate Officer Hodson's use of force not with the benefit of hindsight, but rather as it appeared to the officer at the time of the encounter. *Graham*, 490 U.S. at 396. Although we accept as true the fact that Smith was not actively resisting, a reasonable officer who happened on the scene could reasonably misconstrue Smith's unresponsiveness as resistance requiring the minimal use of force. *See Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir. 1995) (focusing upon whether an officers' mistaken belief that probable cause existed was reasonable in the qualified immunity context). Thus, Officer Hodson's attempt to apply a knee strike—failed as it may have been—did not violate the Fourth Amendment.

Finally, we do not believe the officers' use of handcuffs was an unreasonable use of force. Rather, the Defendants attempted to detain an unresponsive individual about whom they had, at the very least, "a reasonable suspicion of criminal activity." *Voida*, 963 F.2d at 958 (citing *United States v. Taylor*, 716 F.2d 701, 708-09 (9th Cir. 1983). While the officers did not remove the handcuffs after learning of Smith's medical condition, the use of force was measured, brief and appropriate to accomplish the purposes of the investigatory stop—securing Smith and his vehicle, dispelling any notion that Smith was engaged in criminal activity and preserving the officers', public's and even Smith's safety. *See id.*

### III. Conclusion

The district court correctly granted summary judgment in this case. Officers Rogers and Foster appropriately detained Smith to investigate whether he was driving while under the influence of drugs or alcohol. If the officers did surpass the permissible bounds of a *Terry* stop, they had probable cause to arrest Smith and could reasonably resort to the use of handcuffs. Finally, the officers' minimal use of force was

objectively reasonable given the totality of the circumstances. The decision of the district court is therefore AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*