**Larry Darnell McCALL–BEY Plaintiff,**

v.

**P. KIRNER # 14654, R. Rempas # 14567, Lieutenant—Name—illegible # 286 Lieutenant—Name—illegible # 1830, Defendants.**

No. 01 C 8134.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 26, 2002.

---

Larry Darnell McCall–Bey, Chicago, IL, Pro.se.

Joseph M. Polick, Margaret Ann Carey, City of Chicago, Department of Law, Individual Defense Litigation, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

This case is before the Court on the cross-motions for summary judgment filed by the plaintiff and the defendants pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the defendants' cross-motion ·for summary judgment is granted and the plaintiff's motion is denied.

## BACKGROUND

The following information is taken from the parties briefs and Rule 56.1 Statements of Material Facts. The plaintiff, Larry Darnell McCall–Bey, is a resident of the city of Chicago, Illinois. The defendants in this case are members of the Chicago Police Department. This civil rights action pursuant to 42 U.S.C. § 1983 arises from a confrontation between the plaintiff and the defendants on a public street in the city of Chicago.

On May 14, 2001, defendants Ron Rempas and Paul Kirner were working as police officers for the City of Chicago. On that day, they were working in plain clothes and in an unmarked car. Both defendants were wearing black bulletproof vests with their police stars dis-

played outside their clothing. At approximately 10:15 a.m., the two officers were on routine patrol in the area of 58th Street and Prairie Avenue in Chicago. From the defendants' statement of material facts, which McCall–Bey does not dispute, there are store fronts on the south side of the street near this intersection. (Def. 56.1 Stmt. at ¶ 5.) The majority of these store fronts are boarded up and/or vacant. (*Id.*) It is apparently an undisputed fact that this is a high crime area in Chicago as many of these store fronts were known to be focal points for illegal drug activity. (*Id.* at ¶ 6.)

As Rempas and Kirner were driving in this area, they noticed three men standing together near the vacant store fronts. They then proceeded to drive up to these individuals slowly. As Rempas and Kirner exited their vehicle, they told the men who they were and asked the men if they could speak to them. It was at this point that the plaintiff immediately moved his fist to the side of his leg and he turned "abruptly" and "quickly" walked away. (*Id.* at ¶¶ 11–12.) Rempas approached the two individuals that remained and Kirner approached McCall–Bey. Kirner identified himself as a police officer and asked if he could speak with the plaintiff. McCall–Bey stopped and turned around. Kirner recognized that McCall–Bey still had one of his hands in a closed fist as if he were attempting to hide something. (*Id.* at ¶ 15.) Kirner, for his own safety, then asked McCall–Bey to open his closed fist. The plaintiff complied with this request. In his hand was a "blue tinted baggie," which Kirner suspected contained narcotics. (*Id.* at ¶ 17.) At that time, McCall–Bey was placed under arrest and handcuffed. Once the plaintiff was transported to the police station, he was searched and more narcotics were found in his waist band. (These substances were later identified as cocaine and heroin.) He was then

charged with possession of a controlled substance.

McCall–Bey filed a motion to suppress the evidence that was collected during the interaction between the plaintiff and the defendants. At the conclusion of a hearing on this motion on August 9, 2001, Judge Stuart Palmer of the Circuit Court of Cook County apparently indicated that he did not believe there was probable cause or reasonable suspicion for the officers to have stopped and searched McCall–Bey on the street. At that point, the Assistant State's Attorney moved to *nolle prosequi* the case. Judge Palmer granted that motion and the case was dismissed.

On October 23, 2001, McCall–Bey filed his two count *pro se* complaint against the defendants. The complaint states claims against the defendants in both their individual and official capacities pursuant to 42 U.S.C. § 1983. Count I alleges that the search and seizure of the plaintiff by the defendants violated his rights under the Fourth Amendment to the U.S. Constitution. Count II of the complaint alleges a claim for malicious prosecution under the Fourth Amendment to the U.S. Constitution.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir.1994). The non-moving party must then set forth specific facts showing there is a genuine issue of

material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party and should not make credibility determinations or weigh evidence. *Associated Milk Producers, Inc. v. Meadow Gold Dairies, Inc.,* 27 F.3d 268, 270 (7th Cir.1994). The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on· which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## I. The Constitutionality of the Seizure and Search

42 U.S.C. § 1983 "is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997). "The standards for a successful Section 1983 action against local police officers or a municipality are well known." *Ienco v. City of Chicago,* 286 F.3d 994, 997 (7th Cir.2002). The first step is for the plaintiff to demonstrate that he or she has been deprived of a federal constitutional right. *See id.* at 997–98. The second step is to show that the constitutional deprivation was caused by persons acting under color of state law. *See id.* In this case, the parties· do not dispute that the defendants were acting under the color of state law, but all other elements of McCall–Bey's claims are contested.

■ The first issue we will address is whether the seizure of McCall–Bey by the defendants violated his Fourth Amendment rights. A Fourth Amendment seizure occurs when a police officer's actions restrain a person's freedom to walk away from the encounter. *See United States v. Mancillas,* 183 F.3d 682, 695 (7th Cir.1999) (quoting *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Such seizures come in two categories: brief investigatory stops, known as *Terry* stops, and full custodial arrests. *See Mancillas,* 183 F.3d at 695; *see also Smith v. Ball State Univ.,* 295 F.3d 763, 768 (7th Cir. 2002) (discussing the subtle differences between a *Terry* stop and a formal arrest). In this case, it is undisputed that McCall–Bey was seized. The dispute is whether the seizures were *Terry* stops or full custodial arrests, and, regardless of the classification, whether the seizures were reasonable under the circumstances. 

■ A *Terry* stop is permissible when an officer can point to articulable facts demonstrating a reasonable suspicion that crime is afoot. *See Mancillas,* 183 F.3d at 695; *compare United States v. Packer,* 15 F.3d 654, 656–59 (7th Cir.1994) (holding that the facts within police officers' knowledge were insufficient to support a reasonable suspicion that crime was afoot). *Terry* is based on safety concerns for police officers and the public. *See United States v. Mitchell,* 256 F.3d 734, 737–38 (7th Cir. 2001). If an officer is justified in believing that a person may be armed or potentially violent, the officer can take the measures necessary to determine if the person has a

weapon and to neutralize the threat of harm. *See id.* If there are sufficient facts to support a *Terry* stop, the length of the stop and the manner in which it is carried out must be reasonable, so that the detention lasts no longer than necessary, and the officers use the least intrusive means available to effectuate the purpose of the stop. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

▪ By contrast, a full custodial arrest must be supported by probable cause, which is a higher standard than the reasonable suspicion that will justify a *Terry* stop. *See Ball St. Univ.,* 295 F.3d at 768. There is no precise test to determine probable cause. *United States v. McClinton,* 135 F.3d 1178, 1183 (7th Cir.1998); *see also United States v. Quintanilla,* 218 F.3d 674, 677 n. 3 (7th Cir.2000) (noting that the Supreme Court has not defined the legal phrase probable cause); *Spiegel v. Cortese,* 196 F.3d 717, 724 n. 1 (7th Cir.1999) (noting that probable cause is a fluid concept, citing *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Probable cause depends on the totality of the facts and circumstances at hand and exists when an officer has reasonably trustworthy information sufficient to justify a prudent person to believe that a suspect has committed, is committing, or is about to commit an offense. *See United States v. Sawyer,* 224 F.3d 675, 678–79 (7th Cir.2000). "Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (citing *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.1992)). Indeed, probable cause is less than a more likely than not test, "but how much less will depend on the circumstances ... including the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Cortese,* 196 F.3d at 724 n. 1 (quoting *Gramenos v. Jewel Cos.,* 797 F.2d 432, 438 (7th Cir.1986) and *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

In this case, we are faced with an unusual situation. Based on our reading of the papers, we would likely conclude that, at the very least, the defendants seizure of McCall–Bey in front of the vacant street fronts was a *Terry* stop. It is undisputed that: 1) the seizure took place in a high crime area that was notorious for a high volume of illicit drug activity; 2) Rempas and Kirner exited their vehicle, identified themselves as police officers, and asked the plaintiff if they could speak with him; 3) McCall–Bey suspiciously clenched his fist and lowered it to his side as if to conceal what was contained inside; and 4) after being approached by Kirner, McCall–Bey turned abruptly away and started to quickly walk away from the officers. It is the law of this circuit that a person's location in a high crime area and his flight from police are both factors relevant to determining whether there was reasonable suspicion to detain the person. *See United States v. Quinn,* 83 F.3d 917, 922 n. 2 (7th Cir.1996) (stating that "courts may consider the defendant's presence in a high crime area as part of the totality of the circumstances confronting the officer at the time of the stop") (citations omitted); *Tom v. Voida,* 963 F.2d 952, 958 (7th Cir. 1992) (finding that "flight is certainly a relevant and probative factor" in supporting a finding of reasonable suspicion); *Mearday v. City of Chicago,* 196 F.Supp.2d 700, 710 (N.D.Ill.2002) (same). Given these facts, we would likely conclude that Officer Kirner had an objective basis for stopping McCall–Bey.

▪ However, what makes this case unusual is that Judge Palmer of the Circuit Court of Cook County has already made a substantive evaluation on this issue. After

a suppression hearing during which he was able to judge the credibility of the witnesses and weigh the available evidence, Judge Palmer indicated that he felt there was neither reasonable suspicion nor probable cause to support the seizure of McCall–Bey. Before he was able to make a formal ruling to this effect, the Assistant State's Attorney moved to *nolle prosequi* the case. Therefore, for purposes of this *motion only*, we conclude that McCall–Bey has met his burden of showing that his seizure by the defendants, and the corresponding search of his closed fist, constituted a violation of his Fourth Amendment rights.

However, this does not end our discussion of this issue. The defendants have argued that, even if we conclude that their actions violated the plaintiff's constitutional rights, they are still entitled to qualified immunity. We agree.

 Qualified immunity shields those government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As a preliminary matter, because the defense of qualified immunity only applies to officials acting within the scope of their discretionary authority, a defendant claiming qualified immunity "must demonstrate objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Mearday*, 196 F.Supp.2d at 707 (quoting *Pyka v. Village of Orland Park*, 906 F.Supp. 1196, 1216 (N.D.Ill.1995)). In this case, there is no dispute that the defendants' actions in this case resulted from the performance of their duties as Chicago police officers.

Qualified immunity is a two-step analysis. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Cortese*, 196 F.3d at 723. The first step is to determine if there is a constitutional violation present on the facts alleged when those facts are construed most favorably to the party asserting the injury. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. If the plaintiff presents a constitutional injury, the second step is to determine whether the right was clearly established at the time the violation occurred. *See id.* The second step "must be undertaken in light of the specific context of the case, not as a general proposition . . . ." *Id.* In other words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). "[T]he right allegedly violated must be defined at an appropriate level of specificity before a court can determine if it was clearly established." *Id.* (quoting *Wilson*, 526 U.S. at 615, 119 S.Ct. 1692). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . ." *Id.* at 205, 121 S.Ct. 2151. "If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.*

 In this case, the two-step qualified immunity analysis is relatively straightforward. With respect to the first prong, we have already determined that, for purposes of this motion, the plaintiff has demonstrated that a violation of his Fourth Amendment rights did in fact occur when he was stopped by the defendants in front of the vacant store fronts. As for the second step in the analysis, there is noth-

ing in the record in this case to suggest that, when Rempas and Kirner approached McCall–Bey on the street, they did so with the specific intent to willfully violate his constitutional rights. As stated above, the defendants were driving down the street in a high crime area and they saw three suspicious individuals lingering around the front of a vacant store. Based on their training and experience, these officers then concluded that there could have been illegal activity taking place. They approached the individuals and McCall–Bey was searched after he turned and quickly walked away. Nothing in this scenario leaps out at us as being evidence of the defendants' conscious effort to violate the plaintiff's civil rights.

We reach this conclusion despite Judge Palmer's finding that neither reasonable suspicion nor probable cause existed to support the seizure. That inquiry is very different from what we are are asked to do in this case. In the criminal action, Judge Palmer had to perform an impartial review of the circumstances surrounding the plaintiff's arrest for purposes of deciding whether the evidence found on his person was admissible. In this case, we must decide whether it was reasonable, given the circumstances, for the officers to have made the stop and directed the plaintiff to open his fist in the first place. We will not impose civil liability on an individual police officer simply because a trial judge later determined that a search and seizure were unconstitutional. As the Supreme Court has held, Section 1983 liability can only attach if the officers willfully violated the plaintiff's civil rights; a good faith search that is later deemed unconstitutional is not actionable if the mistake was reasonable. *See Saucier,* 533 U.S. at 202–05, 121 S.Ct. 2151.

Therefore, because there is no genuine issue of material fact in the record in this case on the second prong of the qualified immunity analysis, the defendants are entitled to summary judgment. The defendants have established that they reasonably believed at the time of the search and seizure that they had reasonable suspicion to stop McCall–Bey. Aside from mere conclusory statements, the plaintiff has offered no substantive evidence to contradict this finding. Because they may have made a reasonable and understandable mistake as to the constitutionality of their actions, they are entitled to qualified immunity. Summary judgment is entered on behalf of the defendants on Count I of the complaint.

## II. Malicious Prosecution under the Fourth Amendment

McCall–Bey's final Fourth Amendment claim is that the defendants are liable because they "knew or should have known that plaintiff had the right not to be haled into court at all to answer the charges brought against him." We assume for purposes of this motion that the plaintiff is asserting the constitutional theory of malicious prosecution.

The premise of the malicious prosecution count in the plaintiff's complaint is that his civil rights were violated when he was forced to appear in court after an unconstitutional search and seizure. As the Seventh Circuit has recognized in dictum, this malicious prosecution theory stretches the Fourth Amendment to its limits. *See Cervantes v. Jones,* 188 F.3d 805, 808 n. 2 (7th Cir.1999) ("the tort of malicious prosecution fits uneasily within the Fourth Amendment... That amendment proscribes unreasonable searches and seizures and has been held to prohibit arbitrary law-enforcement actions up until the time of arraignment. To justify a Fourth Amendment malicious prosecution claim, then, one has to extend the period of 'seizure' past arraignment" (quoting *Kerr*

*v. Lyford,* 171 F.3d 330, 343 (5th Cir.1999) (Jones, J. concurring)). Furthermore, the Seventh Circuit has recently held that "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution" because the availability of a state remedy affords all the process that was due. *Newsome v. McCabe,* 256 F.3d 747, 750 (7th Cir.2001). Illinois law provides a cause of action for malicious prosecution. *See Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222 (1990).

 Nevertheless, in *Newsome,* the Seventh Circuit did state that a plaintiff may "have a due process claim in the original sense of that phrase" if the underlying facts support a due process violation. *Newsome,* 256 F.3d at 752. In this case, based on the record before the Court, McCall–Bey has not raised facts to support a due process violation. In fact, the opposite is true. When confronted with a well-reasoned motion to suppress the evidence gathered as a result of the seizure of the plaintiff by the defendants, Judge Palmer of the Circuit Court was ready to grant that motion. Thus, plaintiff's due process rights were fully protected. Aside from the inconvenience of having to appear in court and the embarrassment associated with being arrested, McCall–Bey has simply not established that his due process rights were violated as a result of the search and seizure. Therefore, McCall–Bey's Fourth Amendment malicious prosecution claims must be dismissed. *See Mearday,* 196 F.Supp.2d at 714–15.

 Finally, even though the plaintiff does not allege a state law count of malicious prosecution in his complaint, he does intimate that he is also entitled to recover under Illinois law. Given the Seventh Circuit's recent holding in *Newsome,* we will briefly address this cause of action. The tort of malicious prosecution requires a showing that: 1) the plaintiff was subject to judicial proceedings; 2) for which there was no probable cause; 3) the defendant instituted or continued the proceedings maliciously; 4) the proceedings were terminated in the plaintiff's favor; and 5) there was an injury. *See Cervantes,* 188 F.3d at 809; *Sneed v. Rybicki,* 146 F.3d 478, 480–81 (7th Cir.1998). We have already accepted for purposes of this motion that McCall–Bey was subject to judicial proceedings for which there was no probable cause.

 With respect to the third element of the cause of action, there is absolutely no evidence that the defendants instituted or continued the proceedings maliciously. In order to be liable for malicious prosecution, "a defendant either must have initiated a criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Ins. Co.,* 152 Ill.App.3d 578, 583, 105 Ill.Dec. 471, 504 N.E.2d 756 (1986). Put another way, "[l]iability for malicious prosecution ... extends to [police officers] who played a significant role in causing the prosecution of the plaintiff [.]" *Frye v. O'Neill,* 166 Ill.App.3d 963, 975, 117 Ill.Dec. 882, 520 N.E.2d 1233 (1988). *See also Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir.1996) (plaintiff must show that the officer used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution); *Newsome v. James,* 968 F.Supp. 1318, 1323 (N.D.Ill.1997) (stating the issue as whether the police officer "got the ball rolling in the unwarranted prosecution" of the plaintiff). In this case, there is nothing to suggest that the defendants maliciously instigated the ultimate criminal prosecution of the plaintiff. In fact, the record is devoid of any evidence of malice on the part of the defendants. What is clear from the record is that the

defendants discovered narcotics in the plaintiff's possession after what they believed was a legitimate *Terry* stop. They then filed an arrest report and forwarded the case to the Cook County State's Attorney's Office, which exercised its discretion to prosecute McCall–Bey. Therefore, we conclude there is not a genuine issue of material fact on the third element of the state malicious prosecution claim. The defendants are entitled to summary judgment on Count II of the complaint.

## CONCLUSION

For the foregoing reasons, the defendants' cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is granted and the plaintiff's motion for summary judgment is denied. Judgment is to be entered on behalf of the defendants on Counts I and II of the complaint. This case is terminated. This is a final and appealable order.