In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1213

FRANK MCALLISTER,

*Plaintiff-Appellee,*

*v.*

JERRY L. PRICE, in his individual capacity,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:07 CV 141—**Joseph S. Van Bokkelen**, *Judge.*

ARGUED JUNE 1, 2010—DECIDED AUGUST 12, 2010

Before BAUER, FLAUM, and TINDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. This is an interlocutory appeal from a district court's denial of summary judgment to a defendant who claims qualified immunity. The plaintiff, Frank McAllister, suffered a diabetic episode resulting in a car crash. McAllister alleges that the officer responding to the incident, Jerry Price, violated his Fourth Amendment rights by using excessive force to remove McAllister from his car. Finding genuine issues

of material fact about whether Price violated McAllister's clearly established constitutional rights, we affirm.

## I. Background

At approximately 2:00 p.m. in the afternoon of March 1, 2006, McAllister was driving his vehicle in the town of Burns Harbor, Indiana. McAllister suffers from diabetes and was wearing a medical alert necklace describing his condition. While driving eastbound on U.S. Highway 20, McAllister's blood sugar level plummeted, sending him into a severe hypoglycemic state during which he struck two other vehicles.

Michelle Draves, a fifth-grade teacher, witnessed the accident. She too was traveling eastbound on U.S. Highway 20. She noticed a car approaching her from behind. The car passed, traveling at what she estimates to be 65 miles per hour as compared to her speed of 55 miles per hour. The car then hit a truck and slid into a second vehicle.

The truck was driven by Craig Tkach, captain of the Hammond Fire Department and a trained emergency medical technician ("EMT"). Like Draves and McAllister, Tkach was headed east on U.S. Highway 20. After being struck by McAllister, his vehicle went off the road and came to rest roughly one hundred feet from the point of impact. The accident resulted in $8,500 in damage to his vehicle, but Tkach was unharmed.

The other driver struck by McAllister was Donald Barden. Barden was also traveling east on Highway 20,

but he had stopped at a red light at the intersection with Highway 149. Barden describes feeling a "slight bump" in the right rear side of his Ford Ranger truck.

Multiple people reported the accident by calling 911. Price was dispatched to the scene by county radio. The incident was described to Price as a traffic accident involving a potentially intoxicated driver.

McAllister testified at his deposition that he was not in pain following the accident. The inside of his vehicle was not damaged and the impact of the collision was not severe enough to deploy its airbags. McAllister was wearing a seat belt at the time of the accident.

Immediately after the accident, Barden approached McAllister's vehicle and asked if McAllister was ok. McAllister was unable to answer at that time, but remembers being asked.

Price arrived on the scene shortly after the accident. Barden testified that McAllister was staring off into space and convulsing as Price approached his car. Draves also stated that McAllister was twitching as Price approached. According to Barden, McAllister did not appear drunk.

Once alongside McAllister's car, Price yelled for McAllister to turn off the engine. McAllister later testified at his deposition that he tried to shut off his ignition in response to Price's request, but could not. Price then asked McAllister what was wrong with him, but McAllister was unable to respond. According to Price's testimony, McAllister appeared to be "lethargic and nonresponsive."

Concerned that McAllister might attempt to flee the scene, Price then forcibly removed McAllister from his car. According to Barden, Price pulled McAllister out of the car by his left arm and then "threw" McAllister to the ground by applying his knee to McAllister's lower back, with his full body weight behind it. Once McAllister was on the ground, Price handcuffed him. After being handcuffed, McAllister lay face first on the ground twitching intensely. Price then told Barden that McAllister had "pissed me off." Price testified at his deposition that he was "angry" because he thought he was dealing with a drunk driver who had caused two collisions.

As McAllister lay handcuffed on the ground, Price looked through his wallet and asked him if he was a diabetic. According to Price, McAllister shook his head no.

Price then put McAllister into his police vehicle. Tkach suggested that McAllister check for a medical alert bracelet or necklace. Price discovered McAllister's medical alert necklace. He then released McAllister from the handcuffs and was no longer angry and forceful.

When McAllister tried to stand up—apparently after recovering from the worst of his hypoglycemic state—he began complaining of a pain in his hip. Barden and Tkach also noticed pieces of asphalt, dirt, and scratches on McAllister's face. Barden and Draves both observed that McAllister's wrists were bleeding, which Price admitted was likely because of the handcuffs.

An EMT who responded to the accident, Mary Wesley, wrote a report in which she indicated that McAllister

suffered his injuries during the altercation with Price. She testified at her deposition that her report reflects what Price told her at the scene. Her recollection is that Price told her that McAllister landed on his hip when Price took him to the ground. No one other than Price told Wesley that McAllister had behaved aggressively.

McAllister was ultimately diagnosed with a broken hip and a bruised lung. Dr. Bruce Thoma, the orthopedic surgeon who treated McAllister after the incident, testified that the most common reason that people sustain a broken hip is because of a fall, although he could not rule out the possibility that the injury was sustained during the earlier collisions. As a result of the injury, McAllister had to undergo hip surgery and remain in the hospital for twenty-one days.

The day after the incident, Barden went to the Burns Harbor police station to file a complaint about Price. Upon arriving at the station he discovered that Price was the chief of police. He left without filing a complaint.

McAllister filed this lawsuit on April 11, 2007. He brought claims against Price, the Town of Burns Harbor, and the Burns Harbor Police Department. Only the claims against Price are before us in this appeal.

On May 11, 2009, defendants moved for summary judgment, arguing that Price acted reasonably under the circumstances and therefore the defense of qualified immunity shielded him from liability. Defendants also argued that there were no facts from which a jury could find a policy endorsing the use of excessive force and that therefore no liability could be found on the part of the Town of Burns Harbor.

On January 15, 2010, the district court denied in part and granted in part the motion for summary judgment. The district court granted summary judgment on McAllister's state-law claims against Price in his individual capacity and the Town of Burns Harbor. However, the district court found that there were genuine issues of material fact as to whether Price used excessive force to remove McAllister from his vehicle, concluding that "no reasonable officer could have thought it was acceptable to forcibly remove a man from his car who was physically unable to obey commands, who was in the midst of convulsions, and to throw him to the ground with the full force of his body weight." Price filed a notice of appeal on January 25, 2010. McAllister does not cross-appeal the dismissal of his state-law claims.

## II. Discussion

We review de novo an appeal from a district court's denial of summary judgment to a defendant who claims qualified immunity. *Baird v. Benbarger*, 576 F.3d 340, 343-33 (7th Cir. 2009). We construe the factual record in the light most favorable to the non-movant and draw all reasonable inferences in favor of that party. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment. *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).

The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). When confronted with a claim for qualified immunity, we must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). We may address the prongs in whichever order we believe best suited to the circumstances of the particular cased at hand. *Pearson*, 129 S. Ct. at 818.

Claims that officers used excessive force in seizing a person are evaluated under the Fourth Amendment's reasonableness standard. *See Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2004). The dispositive question is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an "objectively reasonable" manner. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The Supreme Court has directed lower courts to consider three factors in this inquiry: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest by flight. *Id.* at 396.

Price argues that the undisputed facts show that he used a reasonable amount of force to effectuate the seizure of McAllister. In support of this claim, he argues that the district court erred as a matter of law

in considering McAllister's hip injury and his diabetic condition in determining whether the amount of force was excessive. We will address each of these arguments in turn, before turning to the ultimate question of whether the amount of force was reasonable.

## A. Evidence of McAllister's Hip Injury

Price argues that the evidence of McAllister's hip injury was inadmissible because McAllister cannot establish proximate cause between the injury and Price's use of force. We have previously held that a jury may look to the type of injury suffered by a plaintiff to determine whether or not the amount of force used by law enforcement was reasonable. *See Chelios v. Heavener*, 520 F.3d, 678, 690 (7th Cir. 2008). However, Price argues that the plaintiff bears the burden of demonstrating proximate cause between the amount of force used and an injury, relying on *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1077 (7th Cir. 1998). Price suggests that a lay witness may only testify to the subjective existence of symptoms, not their cause, and notes that Dr. Thoma, the treating physician, was unable to testify to the probability that McAllister's injuries were caused by Price's actions rather than the earlier car accidents. He also argues that because McAllister's bones were more brittle than those of a young adult (McAllister was 58 years old at the time of this incident), an injury could have resulted from even a minimal use of force.

Price's arguments miss the mark. First, we have never held that a plaintiff bears any burden (beyond relevance) before that plaintiff's injuries may be considered

in an excessive-force case. In *Carter*, the issue was whether a jury should have received a definition of proximate cause for the state-law claims brought in conjunction with a § 1983 claim. *Id.* at 1077. Injury is not an element of an excessive-force claim; rather, it is evidence of the degree of force imposed and the reasonableness of that force. *See Chelios*, 520 F.3d at 690; *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007). If McAllister had no evidence that his injuries were caused by Price, they would be irrelevant; but so long as there is some evidence connecting those injuries to the force used by Price, the evidence is relevant and the jury may draw reasonable inferences from the evidence presented.

In fact, there is ample evidence to connect McAllister's injuries to the force used by Price. McAllister's admissible testimony about his subjective symptoms corroborates his claim that he was injured by Price, not the earlier car accidents. McAllister testified that he was not in pain before he was taken to the ground, but afterward he was unable to walk. While Dr. Thoma could not testify to the probability that McAllister's hip injury was caused by Price, he did testify that the most common reason for a hip injury is a fall and that the injury to McAllister's lung was consistent with a knee being forced into his back. Finally, even in tort cases where the plaintiff has the burden of establishing cause, the plaintiff may rely on lay testimony when causation is within the understanding of a lay person. *Smith v. Beaty*, 639 N.E.2d 1029, 1042 (Ind. App. 1994), relied on by McAllister, is an example of this principle. In *Smith*, the plaintiff sued a truck driver for injuries after his vehicle

overturned and was then struck by a tractor-trailer. Smith's medical expert was unable to determine the cause of the injuries (whether it was the rollover or the subsequent collision with the truck), but the court held that the doctor's inability to determine the cause was not fatal to Smith's case, and allowed Smith to rely on his own testimony that he did not feel severe pain until after the truck hit his vehicle. *Id.* at 1034. Given the extent of McAllister's injuries and the evidence linking them to Price's conduct, the district court did not err in concluding that McAllister's injuries were relevant to determining whether Price used excessive force.

### B.  Evidence of McAllister's Diabetic State

Price next argues that the district court should not have considered McAllister's medical condition, because Price did not know McAllister was a diabetic at the time he removed McAllister from his car, and that even if he had known of it or should have discovered it earlier, McAllister's diabetic condition does not change what constitutes a reasonable amount of force.

It is true that we have previously held that a reasonable officer cannot be expected to accommodate an injury that is not apparent to him. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 594 (7th Cir. 1997) (holding that officers did not use unreasonable force when the plaintiff was injured after the officers placed him on the floor in a prone position, because the medical conditions that exacerbated this use of force and resulted in the plaintiff's death were not observable to the untrained eye). We have also previously held that officers properly

used force to remove a diabetic driver from a car following a collision. *See Smith v. Ball State Univ.*, 295 F.3d 763, 769 (7th Cir. 2002). It does not follow, however, that McAllister's diabetic condition is irrelevant.

If Price's belief that McAllister was intoxicated was unreasonable, then McAllister's diabetic condition is relevant to the question of whether Price used a reasonable amount of force against him. McAllister argues that his diabetic condition made him unable to flee or resist arrest and also shows that he did not pose an immediate threat to the officer or public safety in general. These are two of the three factors that *Graham* directs courts to consider when evaluating the use of force by an officer. 490 U.S. at 396. Of course, this is not the only possible interpretation of the evidence; if Price reasonably thought McAllister was intoxicated, McAllister's unresponsiveness may have created a safety threat by "adding the element of unpredictability." *See Smith*, 295 F.3d at 769. Similarly, if Price reasonably thought McAllister posed a danger as an intoxicated driver, he would have been justified in using force to remove McAllister from the vehicle. *Id.* at 770. But nothing in *Smith* suggests that McAllister's diabetic condition is wholly irrelevant if Price should have been aware of it. There was no evidence in *Smith* that the officers had formed an unreasonable belief as to whether the plaintiff was intoxicated, and we even then held only that the "minimal force" used to remove the plaintiff from his vehicle and detain him was justified by the circumstances. *Id.* at 771.

While we are hesitant to second-guess the snap judgments made by law enforcement personnel, McAllister has come forward with enough evidence so that a jury could infer that Price's mistaken belief that McAllister was intoxicated was unreasonable. It was clear to Price, as it was to the other witnesses, that McAllister was impaired in some way during and after the accident. Thus, this is not a case like *Estate of Phillips*, where the plaintiff's medical condition was completely hidden. Multiple eyewitness observed McAllister to be convulsing or twitching, and at least one concluded that McAllister was not intoxicated. Price was trained to ask if someone who appears unwell is diabetic, but did not do so before applying the challenged force. McAllister was wearing a medical alert necklace—something that Price was trained to look for—but Price made no attempt to check for it until this course of action was suggested by a witness. Finally, Price was trained to recognize people under the influence of alcohol and drugs; yet if we draw all reasonable inferences in favor of McAllister, Price did not follow that training and leapt to the conclusion that McAllister was intoxicated. For these reasons, the district court did not err in finding a genuine issue of material fact regarding McAllister's diabetic condition.

## C.  Reasonableness of the Force Used by Price

Having rejected Price's arguments that the district court improperly considered the extent of McAllister's injuries and his diabetic condition, we turn to the question of whether McAllister has come forward with enough

evidence to create an issue of fact on whether Price's use of force was reasonable.

McAllister argues that all three factors of the *Graham* test for unreasonable force weigh in his favor. He notes that he was involved in a traffic offense, rather than a serious crime. He argues that even if Price's erroneous belief that he was intoxicated was reasonable, he would only have reason to believe that McAllister had committed a nonviolent crime resulting in no physical injuries. Next, McAllister argues that he did not pose an immediate threat to Price or any other individual. McAllister has introduced evidence to suggest that he was only semiconscious and physically unable to even turn off the ignition of his car at the time of his encounter with Price. McAllister analogizes Price's argument that he might have attempted to drive off, causing another accident, to the argument that a fleeing felon might have been carrying a concealed weapon when there was no particular reason to believe the subject was armed. *See Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) (rejecting qualified immunity for officer who shot fleeing suspect in the back when there was no evidence that the suspect was armed). Finally, McAllister argues that he was unable to flee or resist Price because of his diabetic episode. In support of this claim, he points to witness testimony that he was "twitching" or "convulsing" and McAllister's own testimony that he attempted to turn off the ignition but could not.

McAllister also relies on the degree of force used against him to establish a constitutional violation. It is undisputed that McAllister suffered a broken hip, a

bruised lung, and other bruises, scrapes, and cuts. McAllister underwent a surgical procedure to drain fluid from his injured lung, remained in the hospital for twenty-one days, and underwent several weeks of rehabilitation for his hip injury. As discussed in more detail in Section II.A, McAllister has introduced evidence sufficient for a jury to infer that his injuries were caused by Price's use of force. Viewed in the light most favorable to McAllister, the evidence shows that Price ignored obvious signs of McAllister's medical condition, pulled him out of the car, and took him to the ground with such force that McAllister's hip was broken and his lung bruised from the force of Price's knee in his back, not because such force was necessary but because Price was "angry" with McAllister. Even if Price was justified in using some force to remove McAllister from the vehicle, using the force involved here against a non-resisting suspect could have been unreasonable given the circumstances. Of course, this is not the only possible interpretation of the evidence,[1] but if believed it is sufficient for a jury to conclude that McAllister's use of force was excessive.

---

[1] For example, Price argues that McAllister's bones were so brittle that his broken hip is not inconsistent with Price's claim that he used minimal force. Price also argues that his belief that McAllister was intoxicated was reasonable, because Barden's testimony that McAllister was "staring off into space" and "kind of convulsing" are also consistent with the behavior of an intoxicated driver. Given the evidence on both sides, these are factual disputes not amenable to resolution on summary judgment.

**D. Clearly Established Unlawfulness of Price's Conduct**

Having determined that McAllister has come forward with evidence sufficient to create a genuine issue of material fact as to whether Price violated his Fourth Amendment right against unreasonable search or seizure, we must determine whether the right at issue was clearly established. That is, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted).

McAllister cites several cases from which, he argues, Price could have inferred that his conduct was illegal. For example, in *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), we denied summary judgment on the basis of qualified immunity where an officer pushed a woman he suspected to be driving while intoxicated, causing some scratches, cracked her tooth as he forcefully administered a breathalyzer test, and tightly handcuffed her and brought her to the police station despite the fact that the test revealed a blood-alcohol level of 0.0. *Id.* at 1043-44. In *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005), we rejected a claim of qualified immunity by an officer who knelt on the back of a resisting suspect who was in a prone position, resulting in the suspect's death. *Id.* at 771. In *Levi v. Wilts*,

No. 08-3042, 2009 WL 2905927 (C.D. Ill. 2009), a district court denied qualified immunity to an officer who allegedly applied handcuffs too tightly, causing painful swelling in the plaintiff's wrists and hands. While none of these cases involve the same scenario at issue here—the use of force against a diabetic following a car accident resulting from hypoglycemic shock—they do suggest that Price should have been on notice that elements of his conduct could violate McAllister's constitutional rights.

Price, on the other hand, argues that his conduct is so similar to the conduct of the officers in *Smith v. Ball State, supra*, that he cannot be held liable. In *Smith*, the plaintiff lapsed into a diabetic shock while driving on campus, ending up on a sidewalk and narrowly missing several pedestrians. Two officers responded to the incident, which was reported as possibly involving an intoxicated driver. The officers asked Smith to exit his vehicle but Smith was unresponsive. At that point, one of the officers began to use a "straight arm bar" to lift Smith out of the vehicle. A third officer happened upon the scene and mistakenly concluded that the other officers were engaged in a struggle. As a result, the third officer jumped across the hood of the car and attempted to apply a "knee strike" to the plaintiff's leg. Instead, he slipped and tackled all three of the individuals. 295 F.3d at 766-67.

*Smith* differs from the present case in two important respects. First, as discussed in Part II.B of this opinion, there was no evidence that the officers in *Smith* should

have been aware of Smith's diabetic condition.[2] Here, McAllister has introduced evidence from eyewitnesses to suggest that McAllister did not appear intoxicated but was rather convulsing and appeared to be in need of medical attention. Second, the degree of force the officers intended to apply in *Smith* was significantly less than the force allegedly used by Price here. In *Smith*, the two officers who initially responded did not slam Smith into the ground with the force necessary to cause injury, but rather attempted to use a "straight arm bar" to pull Smith from the car to the ground. Indeed, even after Smith was mistakenly tackled (because of the reasonable belief of the third officer that Smith was struggling with the other police officers), he suffered only a bump on the head. Here, there is evidence to suggest that as a result of the intentional, rather than accidental, use of force, McAllister suffered a broken hip and a bruised lung. *Smith*, which upheld the use of minimal force to extract an unresponsive driver from a vehicle, would not suggest to a reasonable officer that he may slam an unresponsive, convulsing driver into the ground with force sufficient to break the driver's hip and place his knee on the driver's back with enough force to bruise his lung. Such conduct goes beyond the bounds of the plain-

---

[2] The third officer—he of the ill-fated knee strike—knew about Smith's diabetes from a previous encounter. Because he was not on the scene when the officers first made the decision to remove Smith from the car, however, it appears that the initial decision to apply force was made by officers under the impression that Smith was intoxicated.

tiff's clearly established Fourth Amendment rights and thus deprives the defendant of qualified immunity.

### III.  Conclusion

We AFFIRM the district court's denial of summary judgment to Price.