Cheryl D. LYONS, Plaintiff–Appellee,

v.

CITY OF XENIA, et al., Defendants–Appellants.

No. 03–3282.

United States Court of Appeals, Sixth Circuit.

Jan. 27, 2004.

Gibbons, Circuit Judge, concurred in part and filed opinion in which Tarnow, J., joined.

Tarnow, District Judge, dissented in part and filed opinion.

Michael C. Thompson, Dayton, OH, for Plaintiff–Appellee.

Lynnette P. Ballato, Law Office of Nicholas E. Subashi, Dayton, OH, for Defendant–Appellant.

Before GIBBONS, and SUTTON, Circuit Judges;  and TARNOW, District Judge.*

* The Honorable Arthur J. Tarnow.  District Court Judge for the Eastern District of Michigan, sitting by designation.

SUTTON, J., announced the judgment and opinion of the court in which GIBBONS, J., concurred except as to Part II.B.2. TARNOW, J., dissented from the opinion by SUTTON, J. GIBBONS, J., delivered a separate opinion, in which TARNOW, J., concurred, which constitutes the judgment and opinion of the court on the issue addressed in Part II.B.2 of the opinion issued by SUTTON, J.

SUTTON, Circuit Judge.

In this interlocutory appeal, police officers Christine Keith and Matthew Foubert challenge the district court's denial of their motion for summary judgment. Cheryl Lyons sued the officers under 42 U.S.C. § 1983, claiming that they violated the Fourth (and Fourteenth) Amendment by arresting her without probable cause and by using excessive force in making the arrest. The district court determined that genuine issues of material fact precluded summary judgment on the officers' qualified-immunity defense. Because we conclude as a matter of law that Officer Keith did not violate any clearly-established constitutional rights, we reverse the district court's judgment denying her qualified immunity. We also reverse the district court's judgment denying Officer Foubert qualified immunity as to the handcuffing, but through an opinion by Judge Gibbons (joined by Judge Tarnow) the Court affirms the district court's ruling that the claim arising from the alleged tackling incident should go to a jury.

## I.

On the evening of August 18, 1998, Officer Christine Keith received a call to investigate an assault allegedly committed by Aiesha Ward, a sixteen-year old girl, and her friend Sara Dodd. Officer Keith initially went to the Dodd residence to obtain information from Sara's mother. Aiesha was also present at the Dodd residence. After obtaining the information necessary to issue a citation for Sara, Officer Keith told Aiesha that she wanted to speak with her mother and would follow Aiesha to her residence.

Upon arriving home, Aiesha told her mother, Cheryl Lyons, that a police officer was with her, at which time Officer Keith informed Lyons that Aiesha had assaulted another girl. After several exchanges with Lyons, Officer Keith turned to Aiesha and asked for her name and address. Lyons interrupted and told her daughter to stop answering questions because Lyons needed more information. Officer Keith responded that if she could not finish questioning Aiesha, Aiesha would have to come "downtown" with her, to which Lyons answered that Keith "was not taking her daughter anywhere." Lyons claims that during this interchange she told Keith to leave, but that Keith refused, citing her need for information. But Lyons next told the officer to take a seat because she needed to take her blood pressure medicine.

When Lyons walked into the kitchen to get her medicine, Officer Keith followed her. At that point, the verbal confrontation between the two women grew more heated as Officer Keith repeated her requests for information regarding Aiesha. Responding to what she perceived as Officer Keith's "badgering," Lyons became angry and cursed at the officer. Officer Keith claims that in response to Lyons' obscenities, she advised Lyons to calm down and cooperate.

At some point during this verbal exchange, Lyons noticed Officer Keith tightening her right fist down at her side. Keith allegedly took an "aggressive" step toward Lyons, closing the space between the women from three feet to two. Lyons then told the officer: "I'm not scared of you. I know you cannot hit a police officer. I am not stupid." Keith gives a

different rendering of this remark, claiming that Lyons warned her that if she was not wearing a badge, that she would "slap the 'sh[-]' out of" her. According to Keith, Lyons continued to scream obscenities and "got up in [her] face." at which point Keith advised her to back down. Lyons admits that both were "screaming."

Both women agree that Lyons made some sort of hand gesture at this point. According to Lyons, she raised her index finger at the officer, demanding, "[d]amnit, didn't you just hear what I said?" (referring apparently to wanting the opportunity to take her medicine before answering questions). Officer Keith describes the incident as Lyons "rais[ing] her hand towards" Officer Keith's face.

Officer Keith grabbed Lyons' wrist after the finger-pointing/hand-raising episode. In response. Lyons immediately pulled her wrist away. Although Officer Keith claims to have told Lyons she was under arrest, Lyons denies hearing this, claiming that she did not think she was being arrested. It is undisputed that Lyons pulled her wrist away from Officer Keith's grasp and either attempted to, or did, walk away.

According to Lyons, after she pulled her wrist away, she walked into the front room and Officer Keith followed her there. Lyons denies having any additional physical contact with Officer Keith aside from when Keith grabbed her wrist. By contrast. Officer Keith claims that after Lyons pulled her wrist back, the two women struggled as Keith attempted to handcuff Lyons, and Lyons ultimately punched her in the left eye during the struggle. Lyons denies hitting Officer Keith.

At some point during this struggle, all agree. Officer Keith radioed for backup. The call went to Officer Foubert who says he heard Officer Keith "yelling for help" with a distressed tone in her voice, as well as commotion in the background. Lyons claims that a few moments after Officer

Keith made the call, Officer Foubert came running into the house through the front door at full speed. In what Lyons and Aiesha describe as a football tackle, Officer Foubert knocked Lyons to the ground. Lyons claims that her left knee hit the ground and that she was lying on her stomach, with Officer Foubert, a 5'11", 240 lb. man, on top of her midsection. She told the officer that she could not breathe. According to Lyons. Officer Foubert then "threw" Lyons on her right side, and handcuffed her with her arms behind her back.

Officer Foubert gives a different version of the events. As he entered the house, he saw the two women struggling with each other on the floor, side-by-side. By that time, Officer Keith had already placed a handcuff on one of Lyons arms. Officer Foubert pulled Lyons away from Keith by picking her up, then leaned her over a chair, using a "balance displacement technique." It is undisputed that the two officers picked Lyons up under the arms following the tackle/balance displacement technique, and they assisted her out to Keith's cruiser. Keith transported Lyons to the station without further mishap, where she was charged with obstructing official business, assault, and resisting arrest.

Lyons was tried before a jury, which acquitted her on all three charges. Following the acquittal, she filed suit against the City of Xenia, Chief of Police Eric Prindle, and Officers Keith and Foubert, raising claims under 42 U.S.C. § 1983 and state tort law. Because Lyons acknowledged in a pleading that all of her claims against the City of Xenia and Chief Prindle, as well as her claims brought under state law against all four defendants, were meritless, the district court entered summary judgment on these claims.

With respect to the claims remaining against Officers Foubert and Keith, Lyons alleged that the officers violated her Fourth Amendment rights by arresting her without probable cause and by using excessive force in the course of making the arrest. Reasoning that no evidence linked Officer Foubert to the false-arrest claim or Officer Keith to the excessive-force claim, the district court granted the officers' summary judgment motions on these claims. The district court, however, rejected Officer Keith's argument that as a matter of law she had probable cause to arrest Lyons, and rejected Officer Foubert's argument that as a matter of law he did not use excessive force in arresting Lyons. The district court likewise rejected the officers' qualified immunity defenses. If believed, the court concluded, Lyons' presentation of the evidence would show that the officers violated clearly-established constitutional rights. In response, the officers filed this interlocutory appeal.

## II.

In an interlocutory appeal from the denial of a motion for summary judgment on qualified-immunity grounds, we have jurisdiction to review the legal question whether qualified immunity should have been granted. *See Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Mitchell v. Forsyth,* 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The district court's own assertion that genuine issues of material fact preclude summary judgment on qualified-immunity grounds does not bar us from exercising appellate jurisdiction over, and reviewing anew this legal question. *See Doe v. City of Roseville,* 296 F.3d 431, 437–38 (6th Cir.2002) (quoting *Turner v. Scott,* 119 F.3d 425, 428 (6th Cir.1997)).

To determine whether qualified immunity applies, we ask two questions. First, do the facts alleged, when viewed in the light most favorable to the plaintiff, demonstrate that the government official violated the claimant's constitutional rights? *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, in the event a constitutional violation occurred, was the right at issue so clearly established at the time of the incident that a reasonable official should have been aware of its existence? *See id.* at 201–02, 121 S.Ct. 2151. Only if the answer to both questions is yes may an officer's motion for qualified immunity be denied. *See id.* at 202, 121 S.Ct. 2151. Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," immunity should be granted where reasonable officers could fairly disagree about the existence of a constitutional violation. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

### A.

It has long been true that the Fourth Amendment requires probable cause for an arrest. *See Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir.2003). And it has long been true that this inquiry turns on whether the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Courts look at this question through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001) (citations omitted); *cf. Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (applying the same test in the context of judging the reasonableness of force used by officers).

In this instance, the City of Xenia charged Lyons with violating three of its ordinances: (1) obstructing official business; (2) assault; and (3) resisting arrest. To the extent probable cause exists for any one of these charges, the arrest was lawful and our analysis is complete. *See, e.g., Weaver v. Shadoan,* 340 F.3d 398, 407 (6th Cir.2003).

The Xenia ordinance against obstructing official business tracks the language of the Ohio code: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's lawful capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Xenia, Ohio, Ordinance § 608.06; Ohio Rev.Code Ann. § 2921.31. A conviction under the Ohio provision requires (1) the performance of an unprivileged act (2) with the purpose of preventing, obstructing, or delaying the performance by a public official of an authorized act within his official capacity (3) which hampers or impedes the public official in the performance of his lawful duties. *City of North Ridgeville v. Reichbaum,* 112 Ohio App.3d 79, 677 N.E.2d 1245, 1248 (1996).

Lyons' actions plainly satisfy the second and third elements of this probable-cause inquiry, as shown by the following sequence of events–which is not disputed, either because Lyons admitted to the conduct or because she did not contradict other evidence presented on the point. Lyons prevented Officer Keith from questioning her daughter, telling Aiesha not to answer any questions until Officer Keith provided more information. When Officer Keith responded that if she could not finish questioning Aiesha, Aiesha would have to come "downtown" with her, Lyons replied that she "was not taking her daughter anywhere." Lyons then told Officer Keith that she needed to take her blood pressure medicine before they could continue the discussion, and she went into the kitchen to do so. After Keith followed her into the kitchen, Lyons cursed at Keith, and the altercation continued to intensify until the two women were "screaming" at each other. At some point during the encounter, Lyons pointed her index finger at Keith and swore at her again. On this record, it is clear that Lyons intended to, and did, delay Officer Keith's investigation.

The critical issue in the district court's view, and in ours as well, is whether these facts satisfy the first element of the test– the performance of an unprivileged act. Under Ohio law, this requirement demands an affirmative act that interrupts police business. *See City of Hamilton v. Hamm,* 33 Ohio App.3d 175, 514 N.E.2d 942, 943–44 (Ohio Ct.App.1986). A person may not be convicted of the offense simply by doing nothing, such as refusing to provide identification or other information to the police. *See State v. McCrone,* 63 Ohio App.3d 831, 580 N.E.2d 468, 470–71 (Ohio Ct.App.1989).

In deciding that Lyons' actions did not amount to sufficient affirmative acts to give rise to probable cause, the district court emphasized that the conduct of Lyons differed considerably from the affirmative acts of the defendant in *State v. Merz,* No. CA97–05–108, 2000 WL 1051837 (Ohio Ct.App. July 31, 2000). In *Merz,* the Ohio Court of Appeals sustained a conviction for obstructing official business where the defendant refused to provide identification when officers questioned him about dogs that he had allowed to run loose. *Id.* at *2. The defendant verbally abused the officers, physically moved away from them and into his house, and unequivocally indicated that he would physically resist any attempt by police to calm or restrain him– all of which, the court determined, com-

bined to satisfy the affirmative-act requirement for obstructing official business. *Id.*

The facts of *Merz* and this case, as an initial matter, have more in common than the district court concluded. The defendant in *Merz*, it is true, took physical steps to resist the officers. But the Ohio Court of Appeals did not rely on this fact in determining whether the officers had probable cause to arrest. Rather, the court determined that probable cause existed *before* the defendant's physical resistance, when he "unequivocally indicated that he would not provide any identification and that he would physically resist any attempt to calm or restrain him." *Id.* While Lyons appears not to have made such an "unequivocal" statement of resistance to Officer Keith, she undoubtedly demonstrated her hostility and unwillingness to cooperate in physical and verbal ways.

More fundamentally, other Ohio courts have concluded that the affirmative-act requirement may be satisfied on the basis of conduct that is not far afield from what occurred here. For example, hostile or abusive speech that obstructs officers from fulfilling their duties may amount to a sufficient affirmative act to sustain a charge of obstructing official business. *See State v. Stayton,* 126 Ohio App.3d 158, 709 N.E.2d 1224, 1227 (Ohio Ct.App.1998); *see also State v. Overholt,* No. 2905–M, 1999 WL 635717, at *3–4 (Ohio Ct.App. Aug. 18, 1999) (defendant's "interference with the officers' attempts to complete an arrest, coupled with his repeated, prolonged, and profane outbursts" were unprotected fighting words and constituted sufficient "acts" to support a charge under Ohio Rev.Code Ann. § 2921.31). If the volume and demeanor of the defendant make it impossible for police to question another individual, the act requirement is also met. *See City of Warren v. Lucas,* No. 99–T–0019, 2000 WL 655446, at *3 (Ohio Ct.App. May 19, 2000); *see also*

*Reichbaum,* 677 N.E.2d at 1248–49 (finding sufficient affirmative acts where defendant prevented officers from questioning his stepdaughter about a neighbor's complaint of a disturbance at the defendant's home by repeatedly interrupting the questioning and refusing to be led away from his stepdaughter). Where the overall pattern of behavior is one of resistance, moreover, officers may consider the totality of the events, and need not point to a single act that rises to the level of obstruction. *See id.* at 1248–49. *See also Overholt,* 1999 WL 635717, at *2 ("Rather than viewing the acts of a defendant in isolation, the total course of the defendant must be considered.").

■ Measured by the lessons from these precedents, Lyons' conduct would allow a reasonable officer to conclude that she had committed affirmative acts that interfered with police business. The complete picture after all includes more than just Lyons' refusal to provide information; it also includes profanity-laced yelling and finger-pointing at the officer, as well as the disruptive character of her speech–*i.e:* its volume, demeanor, etc.–as in *Lucas.* Add to this Lyons' simultaneous refusal either to let Keith take Aiesha down to the station or to answer Keith's questions about Aiesha, and it becomes clear that Lyons' uncooperative and hostile behavior would give a reasonable officer cause to believe that an arrest for obstructing official business was appropriate.

Nor need we determine exactly where Ohio draws the line on the affirmative-act requirement. In ascertaining whether a constitutional violation occurred, the only question is whether Officer Keith had probable cause–not whether the evidence would be sufficient to support a conviction. *See Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ("Probable cause does not require the

same type of specific evidence of each element of the offense as would be needed to support a conviction."). Nor need we determine whether Aiesha and her mother consented to Officer Keith's presence in the Lyons' house. The fact is, Lyons has only challenged the constitutionality of the seizure (*e.g.*, a false arrest claim), not the constitutionality of the search (*e.g.*, the entry into the house). On this record, Officer Keith's conduct did not rise to the level of a constitutional violation, and at all events in view of the less-than-precise contours of Ohio's affirmative-act requirement her conduct did not violate a clearly-established constitutional right. Officer Keith accordingly is entitled to qualified immunity.

## B.

Under the Fourth Amendment, individuals also have a right to be free of excessive force when police make an arrest or seizure. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As with probable cause, this inquiry turns on the objective reasonableness of the officer's conduct in view of the facts and circumstances facing the officer. *Id.* at 397, 109 S.Ct. 1865. In making this evaluation, courts look at "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (citation and quotation omitted).

The district court concluded that a jury question existed over whether Officer Foubert used excessive force in handcuffing Lyons and in "tackling" her, and that a jury question existed over whether Officer Foubert violated clearly-established constitutional rights in each instance. We consider each conclusion in turn.

### 1.

According to Lyons, Officer Foubert initially handcuffed her "as tight as he could"–so that the handcuffs were "very, very, very tight." Aside from bruising on her wrist, Lyons does not allege any other injury stemming from the handcuffing and does not allege that the tightness of the handcuffs persisted beyond the moment of handcuffing. Nor does Lyons allege that she complained to Foubert about the tightness of the handcuffs and that he ignored her complaints.

The Fourth Amendment, it is true, prohibits unduly tight handcuffing in the course of an arrest. *See Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir.1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir.1993). And this general principle, it is also true, was "clearly established" under Sixth Circuit case law at the time of Lyons' arrest. *See Martin*, 106 F.3d at 1313.

But not all allegations of tight handcuffing amount to excessive force. In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing, *see Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir.2001), and must show that officers ignored plaintiff's complaints that the handcuffs were too tight, *see Burchett v. Kiefer*, 310 F.3d 937, 944–45 (6th Cir.2002) (rejecting excessive force claim as a matter of law where officers left defendant tightly handcuffed for three hours because defendant did not initially complain about the handcuffs, and when he did complain the officers responded promptly). *Cf. Martin*, 106 F.3d at 1313 (finding district court erred by granting qualified immunity because officers handcuffed the defendant so tightly that his hands became numb and swollen, then

failed to respond to the defendant's complaints of pain until thirty-five minutes later).

Lyons cannot satisfy these requirements. She alleges little in the way of physical injuries caused by the handcuffing. And, more critically, she does not allege that her physical complaints to the officers went unheeded. To the contrary, she does not even claim that she told the officers that the handcuffs were too tight. In the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred. These facts thus do not rise to the level of unconstitutionally excessive force. Because Lyons has failed to show that Officer Foubert used excessive force in handcuffing her, his request for qualified immunity should have been granted.

### 2.

Whether Officer Foubert applied unconstitutionally excessive force in tackling Lyons likewise turns on what a reasonable officer would have done under similar circumstances. The question is whether the undisputed facts "demonstrate that a hypothetical reasonable officer" would have "known that his actions, under the circumstances, were objectively unreasonable," *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir.2000), not whether Officer Foubert used the least intrusive means available, *see Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994) ("Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."); *see also Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (noting in the Fourth Amendment context that reasonableness of governmental activity does not hinge on existence of a less-intrusive alternative).

While this episode submits less readily to an answer than the handcuffing claim, I conclude that Lyons has not stated a constitutional claim and at any rate has not shown that Officer Foubert violated a clearly-established constitutional right. Three sets of undisputed facts point the way: (1) Foubert was responding to a distressed call for backup help from a fellow officer who was inside a suspect's home and outside the view of the public; (2) based on the nature of the call, the location of the encounter and Lyons' admission that Foubert made a running unknocked-and-unannounced entry into the house, Foubert clearly (and fairly) believed that Keith was at risk; and (3) when Foubert entered the house, he saw Keith in close proximity to Lyons and the two of them yelling at each other.

Starting with the first point, the parties do not dispute the circumstances that prompted Foubert's sudden arrival on the scene. It is undisputed that Keith was alone during this confrontation, that she was inside the suspect's house and that she radioed Foubert for backup assistance when Lyons became agitated. When Foubert received the call, he detected a tone of distress in the voice of Keith, his partner of over two years, and he heard commotion in the background. Lyons does not contradict this version of events, and indeed confirms that the two women were screaming at each other around the time of the radio call.

Second, Lyons does not challenge Officer Foubert's perception, or the reasonableness of his perception, that Officer Keith was in distress. After receiving the radio call, Foubert understandably feared for his partner's safety. That Keith was inside the suspect's residence–which contained an unknown number of persons and

which was beyond public view–confirmed the perilousness of the situation. Nor does Lyons challenge the constitutionality of Foubert's decision to enter the house without a warrant and without knocking and announcing his presence, a form of entry that the Fourth Amendment permits only in certain emergency situations. *See Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile."); *United States v. Johnson,* 22 F.3d 674, 680 (6th Cir.1994) (describing the scope of the exigency exception to the warrant requirement, which encompasses "risk of danger to police or others"). While Lyons may not be in a position to contradict Foubert's testimony that he thought something "was going wrong" with Officer Keith, she confirms his testimony that he ran into the house, noting that he came "charging" into her house "like a football player" running at "as full speed as you can go in a house." Lyons has offered no explanation why it was unreasonable for Officer Foubert to do just that.

Third, when Foubert came running into the house, it is uncontradicted that he saw Keith and Lyons in close proximity to each other and that Lyons was considerably bigger than Keith. While Lyons denies that she was "wrestling" with Keith and denies punching her, she does not deny that at a minimum the two of them were in close proximity to each other and that considerable commotion and yelling surrounded the scene. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (non-moving party must aver specific facts that contradict moving party's version of the facts to receive favorable interpretation of disputed evidence). Indeed, at oral argument, Lyons' counsel agreed that the uncontra-

dicted facts showed that the two women were "very close" to each other when Foubert rushed into the house and that the two women were yelling. Perceiving that Keith seemed scared and in need of assistance, Foubert proceeded to take control of the situation. Whether what happened next was a football-like "tackle" or the use of a "balance displacement technique" over a nearby chair (which is less of a euphemism than the reader might first suspect, *see Palshook v. Jarrett,* 120 F.Supp.2d 641, 655–56 (N.D.Ohio 2000)) does not affect my view that Officer Foubert acted reasonably under the circumstances.

Either way, it is uncontradicted that Lyons created an apparent threat of safety to a fellow officer inside the confines of Lyons' own home. And it is uncontradicted that whatever the nature of the physical contact between Lyons and Officer Foubert, it did not result in anything approaching a serious physical injury. On this record, it is difficult to second-guess Foubert's decision quickly and aggressively to end the confrontation. Had Foubert charged into a room in which Lyons and Keith were far apart from each other, it might have presented a different situation. But that is not what happened. Foubert acted reasonably under the circumstances, and accordingly his motion for qualified immunity should have been granted.

Consistent with this view, I note that no case (except, now, this one) has held to the contrary in any remotely similar context. In cases where tackling has risen to the level of excessive force, police have either done more than just tackle a suspect, *see Phelps v. Coy,* 286 F.3d 295, 298, 302 (6th Cir.2002) (court found constitutional violation for summary judgment purposes where plaintiff alleged that officers tackled him, hit him, and slammed his head into the floor three times); *Barlow v. Ground,* 943 F.2d 1132, 1136 (9th Cir.1991) (police

tackled suspect and put him in punishing "pain compliance hold"), or they have not had an adequate level of suspicion to justify any seizure at all, *see Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000).

The cases cited by my colleagues do not change matters. In each of those cases, the claimants did not pose a tenable threat to the officers' safety, in conspicuous contrast to the circumstances facing Officer Foubert. *See Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir.2003) (holding that it was objectively unreasonable to throw a lone woman to the ground for protesting a search warrant served by twelve IRS agents); *Santos v. Gates*, 287 F.3d 846, 854–56 (9th Cir.2002) (determining that a jury could find police used excessive force against the plaintiff by throwing him to the ground and breaking his back after he had dropped to his knees with his hands behind his head and was admittedly "passive"). Neither does the fact that overly-tight handcuffing may result in excessive force bolster this claim. Handcuffing after all violates the Constitution only where the individual complains and the officers refuse to respond and where the handcuffing results in physical injury–a different test designed for very different circumstances. *See supra* Part II.B.1.

Indeed, in some cases, courts have determined that officers who used levels of force similar to that alleged here did not violate the Constitution or were at least entitled to qualified immunity. In *Smith v. Ball State University*, 295 F.3d 763 (7th Cir.2002), an officer who arrived late to the scene of an apparent crime perceived two of his fellow officers struggling with a resisting suspect. Although the "suspect" turned out to be an unconscious diabetic, and the other officers were merely trying to remove him from his car, the court found the officer acted reasonably in tackling the suspect (and his fellow officers) to

the ground based on what he believed was going on. *Id.* at 771. Although the officers appeared to struggle physically with the individual in *Smith*, whereas Lyons denies having any actual contact with Keith, other facts–that Keith was alone, that she was physically outmatched by Lyons, and that the two women were in close proximity and screaming–demonstrate that the reasons for concern in this case were at least as strong. Police were also granted immunity from suit for using a somewhat similar level of force in *Saucier*, one of the leading Supreme Court cases on qualified immunity. At a speech given by then-Vice President Gore, a protester (who was known to police as a protester, and not a potential security threat to the Vice President) was half-dragged across the area and shoved or thrown inside a van by police after he unfurled a protest banner. *See Saucier*, 533 U.S. at 198, 209, 121 S.Ct. 2151.

All of this is not to say that a plaintiff must present a case directly on point to show that a right was "clearly established." *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). But precedents defining the right in its particularized form still must adequately demonstrate that it should have been "apparent" to a reasonable officer that the actions were unlawful. *See id.* Because Lyons has not satisfied this burden, I respectfully dissent from my colleague's majority opinion on this issue.

## III.

For the foregoing reasons, the majority reverses the district court's judgment to the extent it denied Officer Keith's request for qualified immunity and Officer Foubert's request for qualified immunity insofar as it pertains to the handcuffing. At the same time, the majority affirms the district court's judgment denying qualified

immunity to Officer Foubert as it relates to the alleged tackling incident, and remands the case for further proceedings consistent with these opinions.

JULIA SMITH GIBBONS, Circuit Judge, concurring in part, writing for the majority in part.

GIBBONS, Circuit Judge.

I agree with Judge Sutton's opinion in its holdings that Officer Keith is entitled to qualified immunity on Lyons's wrongful arrest claim and that Officer Foubert is entitled to qualified immunity on Lyons's excessive force claim relating to her handcuffing. I disagree with the conclusion that Officer Foubert is entitled to qualified immunity on Lyons's excessive force claim with respect to the "tackle." Because Judge Tarnow also disagrees with Judge Sutton on the "tackle" issue and concurs with this opinion, it is this opinion, rather than Part II.B.2 of Judge Sutton's opinion, that constitutes the majority on the "tackle" issue.

## I.

Judge Sutton correctly describes the qualified immunity inquiry. I add a few points, however, that seem pertinent here. In determining whether a right was clearly established, this court will look to the decisions of the Supreme Court, then to its own decisions, and then to the decisions of other circuits. *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996). An officer's act may violate a clearly established constitutional right even if that act has not previously and specifically been declared unlawful. *Id.* All that is required is that the unlawfulness of the action be apparent from pre-existing law. *Id.* If the right was clearly established, the court "determine[s] whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was

objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999). The operative question "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In making an arrest, law enforcement officers are entitled "to use some degree of physical coercion." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, the Fourth Amendment protects citizens who are in the process of being placed under arrest from being subjected to excessive force by the arresting law enforcement officers. *See id.* at 395, 109 S.Ct. 1865. Whether the force used in a particular instance is excessive in violation of the Fourth Amendment depends upon the reasonableness of that force. An officer's use of force is permissible insofar as it is objectively reasonable in light of the circumstances known to the officer at the time of the arrest, "without regard to [her] underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. Obversely, a use of force is excessive when it is unreasonable under the circumstances of the arrest. *See id.* at 395–96, 109 S.Ct. 1865. Determining whether an officer's use of force is objectively reasonable requires that courts consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. Ultimately, force is objectively reasonable when, "from the perspective of a reasonable officer on the scene," the force would be warranted under the circumstances. *Id.* The issue, then, is whether the force to which Officer

Foubert subjected Lyons was warranted under the circumstances from the perspective of a reasonable officer.

Here, we review the denial of a motion for summary judgment in the context of an interlocutory appeal. Summary judgment is not appropriate in the qualified immunity context "if there is a factual dispute ... involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violated clearly established rights." *Buckner v. Kilgore*, 36 F.3d 536, 540 (6th Cir.1994) (quoting *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988)). In other words, where "[t]he legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," summary judgment must not be granted. *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir.1994); *see also Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir.2000) ("Where ... the legal question of qualified immunity turns upon which version of facts one accepts, the jury, not the judge, must determine liability.") (quoting *Sova v. City of Mount Pleasant*, 142 F.3d 898, 902 (6th Cir.1998)).

## II.

In granting summary judgment, Judge Sutton essentially concludes that, even under Lyons's version of events, Officer Foubert would be entitled to qualified immunity. I disagree. Whether Officer Foubert is entitled to qualified immunity on Lyons's excessive force claim relating to the alleged tackle "is completely dependent on which view of the facts is accepted," *Adams*, 31 F.3d at 387, either Lyons's or Foubert's. Because Judge Tarnow agrees with this conclusion, the district court's denial of summary judgment to Officer Foubert on that claim is affirmed.

Several facts are certainly undisputed. Officer Keith and Lyons were yelling at each other and "[i]t got loud." Officer Keith called for backup. Officer Foubert received the call for backup. When he received the call, Officer Foubert heard "muffled noises in the background." Officer Foubert answered Officer Keith's call for backup and ran into Lyons's house. Then, Officer Foubert used force to restrain Lyons. It is also undisputed that, at the time of the incident. Lyons was significantly larger than Officer Keith physically.

At this point, however, Officer Foubert's and Lyons's accounts diverge. Lyons testified that she was merely standing opposite Officer Keith when Officer Foubert arrived on the scene. Though she admits to arguing verbally with Officer Keith. Lyons denies that she and Officer Keith were engaged in a physical altercation at that time. Lyons contends that Officer Foubert then violently tackled her to the ground from her standing position, without warning. Ward, Lyons's daughter, testified that she witnessed the tackle and characterized it as a "football player tackle" for which Officer Foubert used "all his strength."

Officer Foubert, on the other hand, testified that, prior to arriving at Lyons's home, he heard Officer Keith yelling for help over the radio.[1] which caused him to be concerned for her safety. Officer Foubert claims that, when her entered Lyons's home. Officer Keith and Lyons were on the floor "wrestling." Based on this observation. Officer Foubert deduced that Officer Keith was not in control of the situation. He therefore determined that force was necessary to secure the safety of Officer Keith. According to his account.

---

1. Ward and Lyons agreed with Officer Foubert that Officer Keith requested backup but neither made mention of her yelling for help.

Officer Foubert then utilized a balance displacement technique that effectively involved picking up Lyons from the ground, pushing her over a chair, and ultimately handcuffing her.

■ Under Lyons's version of events. Officer Foubert violated her constitutional right against excessive force. A reasonable officer would not find it necessary to forcefully bring to the ground a woman verbally arguing with another police officer, even if the other police officer is a woman who is smaller than the suspect. Hence, it would be objectively unreasonable for Officer Foubert to tackle Lyons under Lyons's version of events. On the other hand, if—as Officer Foubert testifies—Lyons and Officer Keith were physically tussling at the time he arrived, it would be objectively reasonable for him to use force against Lyons, regardless of whether it was tackling or balance displacement, in order to secure Officer Keith's safety, because a reasonable officer in such circumstances would find force to be warranted. Because whether Officer Foubert acted unreasonably and thereby violated Lyons's constitutional right against excessive force depends upon whether the trier of fact accepts Lyons's or Officer Foubert's version of events, Officer Foubert is not entitled to summary judgment under this prong of the qualified immunity analysis.

Judge Sutton concludes that Officer Foubert acted reasonably under either version of events because he would be justified under either scenario in believing that Officer Keith was in danger. I concede that Officer Foubert's actions would be objectively reasonable if, under the circumstances known to Officer Foubert at the time he used force, a reasonable officer would perceive that Officer Keith's safety was in jeopardy and that force was necessary to secure her safety. Yet, I disagree that Officer Foubert had cause to be concerned for Officer Keith's safety under Lyons's version of events and, therefore, believe summary judgment for Officer Foubert is inappropriate.

Of course, even if Officer Foubert violated Lyons's constitutional rights by subjecting her to excessive force, he would still be entitled to qualified immunity if it was not clearly established by law at the time that his actions violated such rights. This requirement protects officers who make a reasonable mistake as to what degree of force is legally permissible in a particular situation. *See Saucier*, 533 U.S. at 205–06, 121 S.Ct. 2151; *see also Greene v. Barber*, 310 F.3d 889, 894 (6th Cir.2002). No violation of a clearly established right occurs in the excessive force context if an officer mistakenly determines that the law permits the amount of force utilized and if that mistake is reasonable. *See Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. Even under this prong of the qualified immunity analysis. Officer Foubert is not entitled to summary judgment. Whether Officer Foubert's determination about the boundaries of the law was mistaken or unreasonable still depends upon what the circumstances were at the time he used force against Lyons. If Officer Keith and Lyons were physically fighting, Officer Foubert would not be mistaken that the law permitted the use of substantial force to secure Officer Keith's safety. On the other hand, if Officer Keith and Lyons were only verbally arguing and Officer Foubert tackled Lyons to the ground. Officer Foubert's determination about the amount of force allowable by law under the circumstances would have been mistaken and unreasonably so. A reasonable officer would know that the law did not permit such a use of force in that circumstance. Making a determination about whether Officer Foubert's actions violated clearly established law, then, turns on whose account is accepted—Lyons's or Officer Foubert's.

Therefore, summary judgment is inappropriate.

Judge Sutton's opinion states that it was not clearly established that tackling would be inappropriate in the circumstances alleged by Lyons. His review of case law leads him to conclude that the only cases in which tackling has been found to constitute arguably excessive force are those in which the tackling has been accompanied by other forceful acts or when there was no justification for detaining a suspect, making any use of physical force against the suspect excessive. At least two cases undermine this proposition. In *Santos v. Gates,* 287 F.3d 846 (9th Cir.2002), the court found in the summary judgment context that tackling a passive individual to the ground could constitute excessive force even when some degree of force against the individual may have been justified. *Id.* at 854–55. Admittedly, in *Santos,* the person complaining of excessive force suffered a broken back as a result of his arrest, *id.* at 850, and the court noted that the extent of his injury was a factor that would support a finding of excessive force. *Id.* at 855. Yet, the court was careful to note that excessive force may occur even when the injuries suffered are minor. *Id.* at 855. *Santos* suggests that, at least in certain circumstances, the tackling of an individual not engaged in a physical altercation with police and whom the police have justification to detain may constitute excessive force.

*Meredith v. Erath,* 342 F.3d 1057 (9th Cir.2003), suggests the same. In *Meredith,* the plaintiff alleged that an IRS agent executing a search warrant forcibly threw her to the ground and handcuffed her because she loudly demanded to see the search warrant and vociferously objected to the search. *Id.* at 1060. The court found that it was clearly established that in such circumstances the force used against the plaintiff would be objectively unreasonable in violation of the Fourth Amendment. *Id.* at 1061. The court therefore denied the IRS agent's motion for summary judgment on the basis of qualified immunity. *Id.* While the court recognized that the handcuffs were placed tightly on the plaintiff's hands and were not loosened after complaints from the plaintiff, the court focused on the acts preceding the actual handcuffing in finding that the IRS agent's actions could constitute excessive force. *Id.* ("[I]t was objectively unreasonable and a violation of the Fourth Amendment for [the agent] to grab [plaintiff] by the arms, throw her to the ground, and twist her arms while handcuffing her."). The court analyzed the legality of the overly tight handcuffs separately and as an act of unlawful detention. *Id.* at 1063–64.

Furthermore, even if no case has expressly held that tackling a suspect arguing with another police officer constitutes excessive force, the lack of such a holding is not dispositive. Excessive force claims arise from virtually "limitless factual circumstances." *Saucier,* 533 U.S. at 205, 121 S.Ct. 2151. The fact that no court has found an officer's use of force in a factually indistinguishable case to be excessive is not troubling. An officer cannot claim entitlement to qualified immunity merely because the very act for which he is challenged has not previously been declared unlawful. *Dickerson,* 101 F.3d at 1158; *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the unlawfulness of his act is apparent in light of pre-existing law, it is clearly established that the act violates the law. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. Even though no case may expressly so hold, it is clear from pre-existing law that a police officer may not tackle a suspect who is arguing with another police officer when the tackling officer has no

reasonable basis for believing that the other officer's safety is in jeopardy.

Such a finding is supported by the fact that overly tight handcuffs can constitute excessive force in certain instances. *See, e.g., Martin v. Heideman,* 106 F.3d 1308 (6th Cir.1997). If overly tight handcuffs can constitute excessive force under certain circumstances, it is readily apparent to me that the more physically intrusive, combative, aggressive, and potentially harmful act of tackling can alone constitute excessive force in certain instances.

Although Judge Sutton finds it significant that no case has expressly held that tackling alone can constitute excessive force, he cites no case holding that tackling alone cannot constitute excessive force, and I have also been unable to locate such a case. In addition, Judge Sutton believes that *Smith v. Ball State University,* 295 F.3d 763 (7th Cir.2002), presents a case quite similar to the case *sub judice.* The cases may be similar, perhaps, but they are not identical. In fact, *Smith* is eminently distinguishable on one key point. In *Smith,* the suspect who was tackled was in physical contact with the officers whom the defendant officer believed to be in danger. *Id.* at 766. Moreover, though the officers interacting with the suspect were merely trying to remove the unconscious suspect from his car, they were physically struggling with the suspect to do so. Indeed, the court noted that the officers were "forcibly removing" the suspect from his car. *Id.* Hence, it was reasonable for the tackling officer—who perceived his fellow officers as being engaged in a physical struggle with a suspect—to tackle the suspect, even though it turns out that the suspect was in fact unconscious. In this case, under Lyons's version of events, no physical contact was occurring between herself and Officer Keith when Officer Foubert tackled her. The interaction between Officer Keith and Lyons provided Officer Foubert with no basis for determining that Officer Keith's safety was in jeopardy.

Finally, even if tackling cannot constitute excessive force unless coupled with another forceful act, Lyons alleges more than mere tackling. Lyons testified that, after tackling her. Officer Foubert forced Lyons onto her stomach and placed himself on top of her to pin her down. According to Lyons. Officer Foubert exerted such force while on top of her that she had trouble breathing. By Lyons's account. Officer Foubert then "threw" her onto her right side and handcuffed her. These additional actions by Officer Foubert alleged by Lyons support a finding that excessive force was used by Officer Foubert under Lyons's version of events.

### III.

Lyons raises a genuine question of material fact as to whether Officer Foubert violated her Fourth Amendment right against the use of excessive force when he tackled or displaced her and as to whether he should have known that his actions were unlawful. These are issues crucial to whether Officer Foubert is entitled to qualified immunity on Lyons's excessive force claim relating to the alleged "tackle." Consequently, the district court correctly denied Officer Foubert's motion for summary judgment as to this claim, and its ruling on this issue is affirmed. I concur in the remainder of Judge Sutton's opinion.

TARNOW, District Judge, concurring in part and dissenting in part.

I concur in Judge Gibbons's conclusion that there is a question of fact as to whether the "tackling" amounted to excessive force. However. I must respectfully dissent from my colleagues' disposition of the false arrest claim and from their determi-

nation that the handcuffing did not amount to excessive force. I will first address the issue of false arrest.

## I. Officer Keith and the Claim of False Arrest

In focusing its analysis only upon whether Officer Keith had probable cause to arrest Lyons, the majority ignores two critical aspects of this case: the situs of the arrest and the absence of a warrant. "The Fourth Amendment 'has drawn a firm line at the entrance to the house,' a threshold which police officers may not cross without a warrant." *Ingram v. City of Columbus,* 185 F.3d 579, 586–87 (6th Cir.1999) (quoting *Payton v. New York,* 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). At the time of Lyons's arrest, it was clearly established that warrantless arrests occurring inside the home require a showing of probable cause and exigent circumstances. *See Payton,* 445 U.S. at 590, 100 S.Ct. 1371. As explained by the *Payton* Court:

> To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.

*Id.* at 588–89, 100 S.Ct. 1371 (quoting *United States v. Reed,* 572 F.2d 412, 423 (2d Cir.1978)). *See also Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'") (quoting *United States v. United States Dist. Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)); *Silverman v. United States,* 365 U.S. 505, 512 n. 4, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ("A sane, decent, civilized society must provide some ...

oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle.") (quoting *United States v. On Lee,* 193 F.2d 306, 315–16 (2d Cir.1951) (Frank, J., dissenting)). Warrantless searches and seizures occurring inside the home are presumptively unreasonable. *Payton,* 445 U.S. at 586, 100 S.Ct. 1371.

The Supreme Court recently reiterated the *Payton* rule in *Kirk v. Louisiana,* 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). Additionally, the rule is understood in the Sixth and other U.S. Circuits, and under Ohio law. *See Martin v. Mitchell.* 280 F.3d 594, 607 (6th Cir.2002); *Ingram,* 185 F.3d at 587; *U.S. v. Morgan,* 743 F.2d 1158, 1161 (6th Cir.1984); *Cleveland v. Shields,* 105 Ohio App.3d 118, 663 N.E.2d 726, 728 (Ohio Ct.App.1995); and *Duncan v. Storie,* 869 F.2d 1100, 1102 (8th Cir.1989). *See also Loria v. Gorman.* 306 F.3d 1271 (2d Cir.2002). and *Hegarty v. Somerset County,* 53 F.3d 1367 (1st Cir. 1995) (both analyzing warrantless home arrests in the context of qualified immunity). The burden of proving exigency is upon the government. *Morgan.* 743 F.2d at 1162.

The majority reasons that, as long as probable cause exists for any of the three offenses with which Lyons was charged—obstructing official business, assault, and resisting arrest—the arrest was lawful and the Court's analysis is complete. The majority found there was probable cause to arrest Lyons for obstructing official business. Because the arrest occurred in the home, this reasoning, which omits any analysis of exigent circumstances, is incorrect. In addition. I disagree with the majority's finding that Officer Keith had probable cause to arrest Lyons for obstructing official business.

A conviction for obstructing official business under either the Xenia Ordinance or

the Ohio Code requires a showing of (1) the performance of an unprivileged act, (2) done with the purpose of preventing, obstructing, or delaying the performance by a public official of any authorized act within his or her official capacity, and (3) which hampers or impedes the public official in the performance of lawful duties. *See* Xenia. Ohio. Ordinance § 608.06; Ohio Rev. Code Ann. § 2921.31. Under Ohio law, an unprivileged act means an affirmative act which interrupts police business. *See City of Hamilton v. Hamm,* 33 Ohio App.3d 175, 514 N.E.2d 942, 943–44 (Ohio Ct.App. 1986).

The majority, finding that Lyons committed an unprivileged act, reasons:

> The complete picture after all includes more than just Lyons' refusal to provide information: it also includes profanity-laced yelling and finger-pointing at the officer, as well as the disruptive character of her speech—i.e. its volume, demeanor, etc. . . . Add to this Lyons' simultaneous refusal either to let Keith take Aiesha down to the station or to answer Keith's questions about Aiesha, and it becomes clear that Lyons' uncooperative and hostile behavior would give a reasonable officer cause to believe that an arrest for obstructing official business was appropriate.

It is important to note that, under Lyons's version of the events, she never affirmatively gave Officer Keith permission to enter her home. Rather, Officer Keith entered the home behind Aiesha, and Lyons was shocked to find her there. Even if this Court assumes that Lyons's lack of objection to Officer Keith's entry amounted to consent, the majority omits the fact that Lyons told Officer Keith to leave her home after Officer Keith refused to provide further background information and before Lyons went to take her blood pressure medication. Until that point, she had done nothing except refuse to provide information, which does not amount to an obstruction of justice under Ohio law. *See State v. Collins,* 88 Ohio App.3d 291, 623 N.E.2d 1269, 1270 (Ohio Ct.App.1993), *overruled on other grounds by State v. Tolliver,* 1996 WL 715438 (Ohio Ct.App. Dec.13, 1996); *see also Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (one cannot be penalized for exercising her constitutional rights).

Thus, Lyons revoked her consent before most of the events constituting an affirmative act occurred. Because Officer Keith had no warrant, she had no official right to remain in Lyons's home after Lyons ordered her to leave. *Cf. Painter v. Robertson,* 185 F.3d 557, 567 (6th Cir.1999); *State v. Rojas,* 92 Ohio App.3d 336, 635 N.E.2d 66, 67 (Ohio Ct.App.1993) (both explaining that an individual may limit or revoke consent to a search). It follows then, that the events which occurred after Lyons directed Officer Keith to leave cannot fairly be used to establish an affirmative act which interrupted police business. Since Lyons did not commit an affirmative act which interrupted police business, there is no need to determine whether the second and third requirements for the offense of obstruction were met.

Furthermore, the government made no showing of exigency. The phrase "exigent circumstances," in conjunction with an arrest occurring in the home, "refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *Morgan,* 743 F.2d at 1162. Exigent circumstances have been found to exist where officers are engaged in hot pursuit; the suspect presents an immediate threat to the safety of the officer or society; or the suspect is about to escape. *Id.* at 1162–63. Accepting as true Lyons's version of the events, I do not believe any reasonable

officer could have concluded there was an "urgent need" to arrest her. *See id.* at 1162.[1]

Moreover, in *Welsh,* 466 U.S. at 753, 104 S.Ct. 2091, the Supreme Court explained that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." The Court noted that the exigent circumstances exception to the warrant requirement should rarely be sanctioned when the underlying offense is minor. *Id.See also Payton,* 445 U.S. at 576, 100 S.Ct. 1371 (limiting the exigent circumstances exception to felony cases).

None of the offenses with which Lyons was charged are sufficiently grave or violent to allow the police to ignore the warrant requirement. *See* City of Xenia, Ohio, General Offenses Code §§ 608.06, 608.08, & 636.02 (defining each of the charged offenses as misdemeanors). Because the arrest was not lawful, Lyons had the right to resist the arrest. *See* City of Xenia, Ohio, General Offenses Code

§ 608.08(b) (making "lawful arrest" an element of the crime of resisting arrest); *see also State v. Campana,* 112 Ohio App.3d 297, 678 N.E.2d 626, 629 (Ohio Ct.App. 1996) & *Elyria v. Tress,* 73 Ohio App.3d 5, 595 N.E.2d 1031, 1034 (Ohio Ct.App.1991) (both explaining that, where a statute makes "lawful arrest" an element of the crime of resisting arrest, an individual may resist an unlawful arrest).[2] Therefore, Officer Keith is not entitled to qualified immunity.[3]

## II. Officer Foubert and the Claim of Excessive Force

The right of individuals to be free from excessive force during an arrest was also clearly established at the time of Lyons's arrest. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As noted by Judge Sutton, this inquiry turns upon the objective reasonableness of the officer's conduct and depends upon the following factors: "the severity of the crime at issue, whether the

1. The Sixth Circuit has observed that, whether exigent circumstances exists is a question for the jury if there is room for difference of opinion. *See Ingram v. City of Columbus,* 185 F.3d 579, 587 (6th Cir.1999). Here, however, there is no room for a difference of opinion because the government made absolutely no showing of exigency. Since there were no exigent circumstances, it is irrelevant whether Officer Keith had probable cause to arrest Lyons for assault and resisting arrest.

2. In *City of Columbus v. Fraley,* 41 Ohio St.2d 173, 324 N.E.2d 735 (Ohio 1975), the Ohio Supreme Court recognized severe limitations upon the common law right of an individual to resist an unlawful arrest. The Court held. "In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Id.* at 746, 324 N.E.2d 735 (syl. no. 3 by the

Court). The court in *Elyria v. Tress,* 73 Ohio App.3d 5, 595 N.E.2d 1031, 1034 (Ohio Ct. App.1991), pointed out that the *Fraley* Court did not have before it a resisting arrest statute making lawfulness an element of the crime of resisting arrest.

3. This case is distinguishable from *City of North Ridgeville v. Reichbaum,* 112 Ohio App.3d 79, 677 N.E.2d 1245 (Ohio Ct.App. 1996), in that the arrest in that case occurred outside the suspect's home. Thus, there would have been no need for the court to determine whether exigent circumstances existed. I, therefore, disagree with the majority's application of *Reichbaum,* as well as *State v. Merz,* 2000 WL 1051837 (Ohio Ct.App. Dec. 13, 1996) to this case. The court's analysis in *Merz* failed to include exigent circumstances. Also, the case is distinguishable in that exigent circumstances could have been found because (1) the suspect attempted to flee, and (2) the dogs he allowed to run loose had attacked other people. No similar circumstances existed in this case.

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. *See also* Ohio Department of Natural Resources (ODNR) Directive § I(A) (February 5, 2001) ("Force used must be: *the most logical, reasonable, and absolutely necessary response* under the circumstances."). Determining whether the amount of force used was reasonable requires a balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

In the instant case, the first *Graham* factor does not favor Judge Sutton's position because the offenses with which Lyons was charged are not severe. Nor does the second *Graham* factor bolster his position when viewing the facts in the light most favorable to Lyons. Under her version of the events, the most that she was doing when Officer Foubert charged into the home was standing in close proximity to, and screaming at. Officer Keith. I do not believe, then, that the "tackling" move used by Officer Foubert was "absolutely necessary." At best, the amount of force used by Officer Foubert was borderline under the ODNR Use of Force Continuum.

Moreover, the fact that Lyons's physical injuries were not severe is not fatal to her case. In *Ingram,* 185 F.3d at 597, the Sixth Circuit explained that a plaintiff "may allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." Section 1983 claims of excessive force encompass emotional harm and do not necessarily require allegations of assault. *Id.See also Holmes v. City of Massillon,* 78 F.3d 1041, 1048 (6th Cir.1996) ("This court is not insensitive to the mental anguish that can affect a victim of police brutality and we realize that this emotional harm can often be quite difficult to measure in mere monetary terms.").

One of the cases upon which Judge Sutton relies in concluding that Officer Foubert's action was objectively reasonable is *Smith v. Ball State University,* 295 F.3d 763 (7th Cir.2002). That case, however, is distinguishable. The plaintiff in *Smith* was a university student who suffered from juvenile diabetes. He lapsed into diabetic shock while driving his car and drove onto a sidewalk on the university campus. The campus police were dispatched by a campus shuttle bus driver, who reported a possible drunk driver and stated that the vehicle nearly struck several pedestrians. The police then dispatched a student who worked as a parking attendant, and asked him to investigate the situation. The student approached the car, observed the plaintiff seated in the front, and noted that the car was running. He then tapped on the window, but the plaintiff did not respond. The student contacted police dispatch and told them the plaintiff was incoherent (and may or may not have been intoxicated or on drugs).

Several minutes later, two campus police officers arrived on the scene. After turning off the ignition, they asked the plaintiff to exit the vehicle. The plaintiff did not respond. The officers then forcibly removed the plaintiff from the car. As they were removing him, a third officer arrived on the scene. Because the first two officers were forcibly removing the plaintiff from his car, the third officer believed the officers and the plaintiff were engaged in a

struggle. He attempted to apply a "knee strike" to the plaintiff's leg but slipped, tackling his fellow officers and the plaintiff. The three officers then held the plaintiff's face to the ground and handcuffed him. When they finally raised the plaintiff to a seated position, one of the officers recognized him from a previous diabetic shock episode.

In determining that the use of force was not excessive, the Seventh Circuit considered the potential threat which a drunk driver poses to public safety. *Id.* at 770. The court concluded that the third officer had reason to believe his fellow officers and the plaintiff were engaged in a struggle. *Id.* at 771.

In the instant case, Lyons was in her own home at the time of the arrest and was clearly not a danger to the public. Unlike the non-responsive plaintiff in *Smith,* Lyons was able to give her own version of events, which contradicts that of Officer Foubert. Under Lyons's version (which did not have her and Officer Keith rolling around on the floor when Officer Foubert entered the home), she was not a threat to either Officer Keith or Officer Foubert. In any event, she was not the type of threat which would warrant her being "tackled," or otherwise placed in such a degrading position, in her own home.

Finally, the conclusion that the amount of force used may have been excessive takes into account the unlawfulness of the arrest. I am certainly mindful that the Sixth Circuit has declined to address the issue of whether an unlawful arrest necessarily makes any use of force excessive. *See, e.g., Young v. Barrett,* 912 F.2d 466 (6th Cir.1990) (unpublished). The plaintiff in *Young,* however, relied upon *Schiller v. Strangis,* 540 F.Supp. 605, 617 (D.Mass.

1982), which considered the unlawfulness of the arrest in determining whether the amount of force used was reasonable. Here, the unlawfulness of the arrest may also make the handcuffing excessive. Although it is true that excessive force claims based on unduly tight handcuffing ordinarily require physical injury, this general rule applies where the arrest itself is lawful. *See Neague v. Cynkar,* 258 F.3d 504, 505 (6th Cir.2001). Without addressing the general issue of whether any degree of force used to effectuate an unlawful arrest is excessive, I believe that, *under the circumstances of this particular case,* the unlawfulness of the arrest is one more factor which militates against a finding that Officer Foubert is entitled to qualified immunity.

In sum, I concur in Judge Gibbons's conclusion that Lyons has presented sufficient evidence to raise a question of fact as to whether the "tackling" amounted to excessive force. I dissent from the majority's determination that the handcuffing did not amount to excessive force. There is a question of fact as to this issue as well.

### III. Conclusion

For the reasons stated above. I would affirm the district court's denial of summary judgment to both officers.